# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel,<br>    1050 K Street NW<br>    Washington, DC 20001 | Civil Case No. _____ |
|         *Plaintiff*, | |
|      -against- | |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury,<br>    1500 Pennsylvania Avenue NW<br>    Washington, DC 20220 | |
| SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office,<br>    1600 Pennsylvania Avenue NW<br>    Washington, DC 20500 | **EMERGENCY TEMPORARY RESTRAINING ORDER SOUGHT**<br><br>**EMERGENCY HEARING RESPECTFULLY REQUESTED** |
| KAREN GORMAN, in her official capacity as Principal Deputy Special Counsel, upon the purported removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel,<br>    1730 M Street NW<br>    Washington, DC 20036 | |
| KARL KAMMANN, in his official capacity as the Chief Operating Officer of the Office of Special Counsel,<br>    1730 M Street NW<br>    Washington, DC 20036 | |
| DONALD J. TRUMP, in his official capacity as President of the United States of America,<br>    1600 Pennsylvania Avenue NW<br>    Washington, DC 20500 | |
| RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br>    725 17th Street, NW<br>    Washington, DC 20503 | |
|         *Defendants*. | |

## COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      The Office of Special Counsel is an independent federal agency led by the Special Counsel. Plaintiff Hampton Dellinger has held the office of Special Counsel since March 6, 2024, following his nomination by the President and confirmation by the Senate. He is entitled to continue to serve as Special Counsel for the remainder of his five-year term and may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b).

2.      On the night of February 7, 2025, President Trump disregarded that clear statutory language and, in a one-sentence email, purported to terminate Special Counsel Dellinger. That email made no attempt to comply with the Special Counsel's for-cause removal protection. It stated simply: "On behalf of President Donald J. Trump, I am writing to inform you that your position as Special Counsel of the US Office of Special Counsel is terminated, effective immediately."

3.      President Trump's purported removal of Special Counsel Dellinger is unlawful. It has no basis in fact and thus cannot be squared with the statutory text. And it is in direct conflict with nearly a century of precedent that defines the standard for removal of independent agency officials and upholds the legality of virtually identical for-cause removal protections for the heads of independent agencies.

4.      As the Special Counsel of the Office of Special Counsel, Mr. Dellinger brings this action against President Trump, the Director of the White House Presidential Personnel Office, the Office of Special Counsel, the Secretary of the Treasury, and the Office of Management and Budget, seeking a declaratory judgment and injunction and, on an emergency basis, a temporary restraining order to prevent the deprivation of his statutory entitlement to exercise the duties of his office.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action for declaratory and injunctive relief under 28 U.S.C. §§ 1331, 1361.

6.    Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

7.    Plaintiff Hampton Y. Dellinger is the Special Counsel of the United States Office of Special Counsel.

8.    Defendant Scott Bessent is the Secretary of the Treasury. He is sued in his official capacity.

9.    Sergio Gor is the Director of the White House Presidential Personnel Office. He is sued in his official capacity.

10.    Defendant Karen Gorman is the Principal Deputy Special Counsel and, upon the removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel.

11.    Defendant Karl Kammann is the Chief Operating Officer of the Office of Special Counsel.

12.    Plaintiff has great respect and admiration for his colleagues in the Office of Special Counsel and names them only in their official capacities as required by law.

13.    Defendant Donald J. Trump is the President of the United States and is responsible for the decision to remove Mr. Dellinger from his office. He is sued in his official capacity.

14.    Defendant Russell Vought is the Director of the Office of Management and Budget as of his confirmation by the Senate on February 7, 2025. He is sued in his official capacity.

## STATUTORY BACKGROUND

15.    The Office of Special Counsel ("OSC") is an independent agency of the United States. In 1978, Congress first established the OSC within the Merit Systems Protection Board ("MSPB") as part of the Civil Service Reform Act of 1978 ("CSRA"), PL 95–454 (S 2640), 92

Stat. 1111 (Oct. 13, 1978). The CSRA was enacted to address widespread public concerns about the federal civil service—including evidence that it was vulnerable to political manipulation and failed to protect whistleblowers.[1]

16.     The legislation that became the CSRA was first proposed by President Carter. In a letter to Congress, President Carter requested that Congress create the MSPB, whose members would be removable only for cause, and a Special Counsel, who would be appointed by the President and confirmed by the Senate. President Carter explained that this structure was intended to "guarantee independent and impartial protection to employees" and thereby "safeguard the rights of Federal employees who 'blow the whistle' on violations of laws or regulations by other employees, including their supervisors."[2]

17.     Over the subsequent seven months, Congress worked to reduce President Carter's proposal to final legislation. Throughout these deliberations, Congress emphasized the importance of an independent Special Counsel with sufficient authority to protect federal employees. To ensure that independence, Congress in the CSRA provided that the Special Counsel "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." Civil Service Reform Act, P.L. 95-454, 92 Stat. 1111, Ch. 12, § 1204.

18.     On October 13, 1978, President Carter signed the CSRA into law, declaring that the "landmark legislation" would create "a new system of excellence and accountability."[3]

---

[1] *The Civil Service and the Statutory Law of Public Employment*, 97 Harv. L. Rev. 1619, 1631–32 (1984).

[2] *Federal Civil Service Reform Message to the Congress* (Mar. 2, 1978), https://www.presidency.ucsb.edu/documents/federal-civil-service-reform-message-the-congress.

[3] *President Jimmy Carter Remarks on Signing the Civil Service Reform Act of 1978 into Law* (Oct. 13, 1978), https://www.presidency.ucsb.edu/documents/civil-service-reform-act-1978-statement-signing-s-2640-into-law.

19.     In 1989, Congress again responded to concerns that whistleblowers within the federal civil service were not adequately protected with the Whistleblower Protection Act of 1989, PL 101–12, 103 Stat 16 (Apr. 10, 1989) (codified as amended at 5 U.S.C §§ 1211–1219). With that law, Congress vested the OSC with new authorities to receive complaints from whistleblowers and to protect them from retaliation. The Act also removed the OSC from its place within the MSPB and established it as an independent agency. 5 U.S.C. § 1211(a). Congress also retained the CSRA's for-cause removal protections, providing that the Special Counsel could be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b).

20.     Upon signing the Whistleblower Protection Act, President Bush celebrated that the Act would "enhance the authority of the Office of Special Counsel to protect whistle-blowers and other employees victimized by prohibited personnel practices." President Bush also specifically approved that the Act retained "current law which provides that the Special Counsel may only be removed for inefficiency, neglect of duty, or malfeasance."[4]

21.     From its inception, Congress intended that the Special Counsel act with independence and impartiality to safeguard the civil service as both an "ombudsman" and "watchdog." *Frazier v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 162–63 (D.C. Cir. 1982).

22.     The OSC's primary mission is to protect federal employees and applicants from prohibited personnel practices ("PPPs"), especially reprisal for whistleblowing. The OSC also provides a secure channel for federal employees to blow the whistle by disclosing wrongdoing. It civilly enforces the Hatch Act, which puts certain restrictions on partisan political activity by

---

[4] George H.W. Bush, Remarks on Signing the Whistleblower Protection Act of 1989 (Apr. 10, 1989), https://bush41library.tamu.edu/archives/public-papers/290.

government employees. And it acts as an aide to Congress by providing reports meant to inform legislative and oversight agendas. 5 U.S.C §§ 1212–1219.

23.      In addition to the CSRA and the Whistleblower Protection Act, Congress conferred authority on the OSC through the Hatch Act and the Uniformed Services Employment & Reemployment Rights Act ("USERRA"), Pub. L. 103-353 (1994) (codified at 38 U.S.C. §§ 4301–4335).

24.      When the OSC receives a complaint alleging a PPP under the CSRA, it reviews the allegations, assesses the evidence, and determines whether to begin an investigation. 5 U.S.C. § 1214. When investigation is warranted, the OSC resolves most matters by assisting settlement or alternative dispute resolution with the complainant-employee and the agency-employer, but the OSC occasionally seeks corrective action on behalf of the employee in the MSPB. *See* 5 U.S.C. §§ 1212, 1215. If the OSC declines to seek corrective action, the employee alleging a PPP retains an independent right of action to file with the MSPB without OSC involvement, subject to certain procedural requirements. 5 U.S.C. § 1221; 5 C.F.R. § 1209.5(a).

25.      The OSC follows a similar procedure upon receipt of a complaint alleging a Hatch Act violation. Congress enacted the Hatch Act in 1939 to restrict political activity, including coerced political activity, of federal employees. 5 U.S.C. § 7321. In most cases of Hatch Act violations, the OSC issues a nonbinding warning letter to the employee. A warning letter typically ends the inquiry, but in rare cases of egregious and repeated violations, the OSC seeks disciplinary action in the MSPB. 5 U.S.C. § 1215. As with PPPs, the MSPB adjudicates the matter and determines what, if any, disciplinary measures are appropriate. 5 U.S.C. § 1204. The MSPB can impose only modest civil penalties, with a maximum monetary penalty of $1,000. 5 U.S.C. § 7326(2). Any disciplinary order imposed by the MSPB is subject to judicial review by the U.S. Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703.

26.    The OSC has similar, but more limited, authority under the USERRA, which Congress passed in 1994 to protect service members and veterans from employment discrimination on the basis of their military service. 38 U.S.C. § 4301(a). The OSC and the Department of Labor share responsibility under USERRA, and the Department refers complaints to the OSC. As with the Hatch Act and PPPs, the OSC first attempts settlement to resolve any complaints and only occasionally initiates an action in the MSPB. *Id*. § 4324(a), (c).

27.    Congress also tasked the OSC in the Whistleblower Protection Act with an oversight role to review government investigations of potential wrongdoing. When a federal employee files a disclosure of wrongdoing, the OSC first determines whether there is a substantial likelihood that the information discloses a violation of law. If so, the OSC asks the agency to investigate and report on the matter. 5 U.S.C. § 1213(c). The OSC then reviews the agency's report, gives the whistleblower an opportunity to comment, provides its assessment of the report, and submits both the agency report and the OSC's findings to Congressional oversight committees and to the President. 5 U.S.C. § 1213(e).

28.    The Special Counsel must be nominated by the President and confirmed by the Senate. The Special Counsel must also be "an attorney who, by demonstrated ability, background, training, or experience, is especially qualified to carry out the functions of the position." 5 U.S.C. § 1211(b).

29.    Once confirmed, the Special Counsel serves a five-year term and, if a successor has not yet been appointed, up to one additional year. "The Special Counsel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b).

**FACTUAL ALLEGATIONS**

30.    On October 3, 2023, President Biden nominated Plaintiff Hampton Dellinger to be Special Counsel of the Office of Special Counsel.[5] The Senate confirmed Mr. Dellinger on February 27, 2024, and he was sworn in as Special Counsel on March 6, 2024.[6] Mr. Dellinger's five-year term expires in 2029.

31.    On February 7, 2025, at 7:22 PM, Special Counsel Dellinger received an email from Sergio Gor, Assistant to the President and the Director of the White House Presidential Personnel Office, which stated in its entirety: "On behalf of President Donald J. Trump, I am writing to inform you that your position as Special Counsel of the US Office of Special Counsel is terminated, effective immediately. Thank you for your service[.]" Ex. A.

32.    The one-sentence email does not allege any inefficiency, neglect of duty, or malfeasance in office by Special Counsel Dellinger, nor could it.[7] In flagrant disregard for the clear

---

[5] *President Biden Announces Hampton Dellinger as Nominee for Special Counsel, Office of the Special Counsel* (Oct. 3, 2023), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2023/10/03/president-biden-announces-hampton-dellinger-as-nominee-for-special-counsel-office-of-the-special-counsel/.

[6] *Hampton Dellinger Sworn In as Special Counsel of OSC* (Mar. 6, 2024), https://osc.gov/News/Pages/Press%20Release%20Template1.aspx.

[7] Only a year into his term, Special Counsel Dellinger has served with distinction and efficiency. In Fiscal Year 2024, the OSC received an unprecedented number of cases while simultaneously reducing its Hatch Act caseload by 39 percent compared to Fiscal Year 2020. U.S. Off. of Special Cons., *OSC's 2024 Accomplishments Include Record Breaking Results and First Ever Actions* (Jan. 6, 2025), https://osc.gov/News/Pages/25-15-OSC-2024-Accomplishments.aspx. Under Special Counsel Dellinger's leadership, the OSC submitted key Hatch Act reports, secured compensatory damages for Army employees, launched a new transparency and accountability initiative, achieved hundreds of favorable decisions on behalf of complainants alleging PPP violations, and assisted over a dozen veterans in asserting their employment rights. *Id.* And Special Counsel Dellinger's work has drawn praise from organizations and individuals across the political spectrum. He was lauded by nonpartisan watchdog organizations for his "nuts-and-bolts reforms" to the protections that whistleblowers receive, Tom Devine, *Group Praises Federal Whistleblower Agency for Nuts and Bolts Reforms, Gov't Accountability Proj.* (Sept. 17, 2024), https://whistleblower.org/press/group-praises-federal-whistleblower-agency-for-nuts-and-bolts-reforms/, and, after Special Counsel Dellinger concluded an investigation into the U.S. Coast

statutory text, Special Counsel Dellinger was purportedly terminated without basis, justification or authority.

33.    The OSC's ability to protect the civil service and investigate alleged misconduct is needed now more than ever. Over the preceding three weeks, an unprecedented number of federal employees with civil service protections have been terminated without cause. Senior career officials have been purged from the Federal Bureau of Investigations. Eighteen Inspectors General from across the federal government have been removed without the justification required by statute.[8] And hundreds of federal employees have been locked out of their computer systems by the U.S. DOGE Service Temporary Organization.[9]

34.    President Trump has also attempted to remove Board Member Gwynne Wilcox from the National Labor Relations Board despite clear statutory for-cause removal protection.[10]

---

Guard's unlawful use of non-disclosure agreements to silence whistleblowers, Senator Ted Cruz (R-TX) responded: "Thank you to Special Counsel Dellinger for your attention to this issue," @SenTedCruz, X (June 6, 2024, 12:40 PM), https://x.com/SenTedCruz/status/1798756854077808858.

[8] *Grassley, Durbin Seek Presidential Explanation for IG Dismissals*, Senate Judiciary Comm. (Jan. 28, 2025), https://www.judiciary.senate.gov/press/rep/releases/grassley-durbin-seek-presidential-explanation-for-ig-dismissals.

[9] Ellen Knickmeyer et al., *Trump and Musk move to dismantle USAID, igniting battle with Democratic lawmakers*, AP (Feb. 3, 2025), https://apnews.com/article/trump-musk-usaid-c0c7799be0b2fa7cad4c806565985fe2; Tim Reid, *Exclusive: Musk aides lock workers out of OPM computer systems*, Reuters (Feb. 2, 2025), https://www.reuters.com/world/us/musk-aides-lock-government-workers-out-computer-systems-us-agency-sources-say-2025-01-31/.

[10] Andrew Hsu, *Trump fires EEOC and labor board officials, setting up legal fight*, NPR (Jan. 28, 2025), https://www.npr.org/2025/01/28/nx-s1-5277103/nlrb-trump-wilcox-abruzzo-democrats-labor.

35.    These events are ongoing, and they have caused "chaos" and "confusion" among civil servants and agency officials.[11] They directly implicate the public's interest in the smooth functioning of the federal workforce, and they raise troubling questions under both the civil service statutes and the Constitution.

36.    Special Counsel Dellinger's purported termination has sown confusion about his authority to lead the OSC and jeopardized the agency's functioning. Congress authorized the OSC with a crucial investigative and oversight role to protect the integrity of the civil service in circumstances such as these. The recent spate of terminations of protected civil service employees under the new presidential administration has created controversies, both about the lawfulness of these actions and about potential retaliation against whistleblowers. The OSC is statutorily tasked with receiving such reports, investigating them, and taking appropriate action. The President's unlawful attempt to remove Special Counsel Dellinger from his office directly violates the modest but vital protections that Congress put in place and renders the OSC and the Special Counsel unable to fulfill their statutory mandate.

## CLAIMS FOR RELIEF

### COUNT ONE
#### ULTRA VIRES IN VIOLATION OF STATUTORY AUTHORITY

37.    The preceding paragraphs are incorporated and realleged here.

38.    Special Counsel Dellinger has a clear entitlement to remain in his office. Once confirmed by the Senate, the Special Counsel serves a five-year term. 5 U.S.C. § 1211(b). The Special Counsel may be removed from that term "by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

---

[11] Allan Smith, *'Fear' and 'chaos' grip federal workers as Trump rapidly remakes the government*, NBC News (Jan. 30, 2025), https://www.nbcnews.com/politics/donald-trump/fear-chaos-grip-federal-workers-trump-remakes-government-rcna189746.

39.     The constitutionality of that protection is dictated by nearly a century of binding Supreme Court precedent upholding materially identical restrictions. *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935); *Wiener v. United States*, 357 U.S. 349, 356 (1958). The Supreme Court has determined already that because the Special Counsel "exercises only limited jurisdiction to enforce certain rules governing Federal Government employers and employees" and "does not bind private parties at all," the Special Counsel's for-cause removal protection does not implicate the constitutional concerns that have resulted in invalidating removal protections for other single-head agencies. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 221 (2020)

40.     President Trump's purported termination of Special Counsel Dellinger is unlawful. The President did not purport to remove Special Counsel Dellinger on the basis of "inefficiency, neglect of duty, or malfeasance in office." In fact, the President's termination email provided no justification at all for Special Counsel Dellinger's termination.

41.     As a result, the President's termination of Special Counsel Dellinger is *ultra vires* and is a clear violation of the statute.

### COUNT TWO
**ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(1) and 706(2)**
(Against Defendants Bessent, Gor, Gorman, Kammann, and Vought)

42.     The preceding paragraphs are incorporated and realleged here.

43.     To the extent that Defendants Bessent, Gor, Gorman, Kammann, and Vought exercise authority with respect to, or on behalf of, the Office of Special Counsel without regard to Mr. Dellinger's position as Special Counsel, those actions are "not in accordance with the law," "contrary to a constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). Special Counsel Dellinger seeks to hold unlawful and set aside such actions, pursuant to section 706 the

Administrative Procedure Act and to compel agency action unlawfully withheld or unreasonably delayed.

## COUNT THREE
### DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201 and 2202

44.    The preceding paragraphs are incorporated and realleged here.

45.    Special Counsel Dellinger is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Special Counsel Dellinger and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Mr. Dellinger is the Special Counsel of the OSC and that the President does not have authority to remove him absent inefficiency, neglect of duty, or malfeasance in office.

## COUNT FOUR
### VIOLATION OF THE SEPARATION OF POWERS

46.    The preceding paragraphs are incorporated and realleged here.

47.    President Trump's purported removal of Special Counsel Dellinger is further invalid because it violates Article I, section 8 and Article II, sections 2 and 3 of the U.S. Constitution. The Constitution empowers Congress to set reasonable limitations on the removal of the heads of independent agencies and it does not confer on the President an authority to violate Congress's scheme. The President's purported removal of Special Counsel Dellinger violates the authorities vested in Congress by the Constitution and further violates the President's duty to "take Care that the Laws be faithfully executed."

## COUNT FIVE
### WRIT OF MANDAMUS

48.    The preceding paragraphs are incorporated and realleged here.

49.    In the alternative, Special Counsel Dellinger is entitled to a writ of mandamus. The Special Counsel statute's removal restrictions impose a ministerial duty on the President and

subordinate officials not to interfere with Special Counsel Dellinger's tenure in office absent cause for inefficiency, neglect of duty, or malfeasance in office. *See Swan v. Clinton*, 100 F.3d 973, 977-78 (D.C. Cir. 1996).

50.    Special Counsel Dellinger is clearly entitled to a writ of mandamus prohibiting his removal from office and, absent this Court granting one of the counts identified above, there is no other adequate means of redress.

## COUNT SIX
### EQUITABLE RELIEF FOR STATUTORY AND CONSTITUTIONAL VIOLATIONS

51.    The preceding paragraphs are incorporated and realleged here.

52.    Under this Court's traditional equitable jurisdiction, the plaintiff is entitled to equitable relief to prevent and restrain ongoing violations of both statutory and constitutional federal law by the defendants. Equitable actions have "long been recognized as the proper means" to prevent public officials from acting unconstitutionally. Because such actions seek simply to halt or prevent a violation of federal law rather than the award of money damages, they do not ask the Court to imply a new cause of action. To the contrary, the ability to sue to enjoin unlawful and unconstitutional actions by federal officers is the creation of courts of equity and reflects a long history of judicial review of illegal executive action, tracing back to England. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

## PRAYER FOR RELIEF

Special Counsel Dellinger requests that the Court:

a.    Declare that the President's termination of Plaintiff Hampton Dellinger was unlawful, and that Plaintiff Hampton Dellinger is the Special Counsel and head of the Office of Special Counsel;

b.    Declare that the Special Counsel of the Office of Special Counsel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office;

c.  Declare that Karen Gorman is not the Acting Special Counsel of the Office of Special Counsel, nor may any other individual serve as the Acting Special Counsel or the head of the Office of Special Counsel;

d.  Order that Plaintiff Hampton Dellinger may not be removed from his office as Special Counsel or in any way be treated as having been removed, denied or obstructed in accessing any of the benefits or resources of his office, or otherwise be obstructed from his ability to carry out his duties;

e.  Order that Defendants Bessent, Gor, Kammann, and Vought may not place an Acting Special Counsel in Plaintiff Hampton Dellinger's position, or otherwise recognize any other person as Special Counsel or as the agency head of the Office of Special Counsel;

f.  Order Defendants Bessent, Gor, Gorman, Kammann, and Vought to pay Plaintiff Hampton Dellinger all wages and benefits owed to him as Special Counsel of the Office of Special Counsel;

g.  Award all other appropriate relief.

Respectfully submitted,

/s/ Joshua A. Matz

Kate L. Doniger*                                    Joshua A. Matz, Bar No. 1045064
HECKER FINK LLP                                     Jackson Erpenbach, Bar No. 1735493
350 Fifth Avenue, 63rd Floor                        Benjamin Stern*
New York, New York 10118                            HECKER FINK LLP
(212) 763-0883                                      1050 K Street NW
kdoniger@heckerfink.com                             Suite 1040
                                                    Washington, DC 20001
                                                    (212) 763-0883
                                                    jmatz@heckerfink.com
                                                    jerpenbach@heckerfink.com
                                                    bstern@heckerfink.com

*Applications for pro hac vice pending              Attorneys for Plaintiff Hampton Dellinger

DATED: February 10, 2025