IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, *Plaintiff*, v. SCOTT BESSENT, *et al.*, *Defendants*. | Civil Action No. 1:25-cv-00385-ABJ |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

On February 7, 2025, the President removed Plaintiff Hampton Dellinger as the head of the Office of Special Counsel (OSC), an Executive Branch agency with a single leader. The Supreme Court has recently made clear in two separate cases that Article II precludes Congress from placing limits on the President's authority to remove principal officers of the United States who serve as sole heads of an Executive Branch agency. *Collins v. Yellen*, 594 U.S. 220 (2021); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020). Consistent with those cases, in 2021, President Biden removed the Commissioner of Social Security, and the only courts of appeals to have addressed the constitutionality of that removal have sustained it. *Rodriguez v. SSA*, 118 F.4th 1302, 1313-14 (11th Cir. 2024); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022). The President lawfully exercised that same authority when he removed Plaintiff from his post last week.

Nonetheless, on February 10, 2025, Plaintiff filed this lawsuit challenging his removal. Compl., ECF No. 1. That day, he also filed a motion for a temporary restraining order, requesting that the Court reinstate him to his former position and enjoin Defendants from recognizing "any other person" as the head of OSC. *See* Pl.'s Mot. for Temporary Restraining Order at 1-2, ECF No. 2. Such an order would be an unprecedented intrusion into the well-established authority of the Executive.

1

For the following reasons, the Court should deny this extraordinary request.

*First*, Plaintiff has not demonstrated that he is likely to succeed on the merits. As noted, binding Supreme Court precedent holds that removal restrictions imposed on single-agency heads violate the President's Article II power to supervise those who wield executive power on his behalf. In *Seila Law*, the Court invalidated the statutory restrictions on removal of the Director of the Consumer Financial Protection Bureau (CFPB), and in *Collins*, the Court explained that *Seila Law* was "all but dispositive" as to the invalidity of similar restrictions on the removal of the Director of the Federal Housing Finance Agency (FHFA), explaining that "[t]he FHFA (like the CFPB) is an agency led by a single Director." 594 U.S. at 250-51. Plaintiff offers no compelling reason why these holdings would not equally apply to the head of the OSC, the only single-head agency whose removal restrictions have not yet been addressed by a federal court.

*Second*, Plaintiff has not demonstrated that in the absence of a temporary restraining order, he will suffer imminent irreparable harm. The loss of government employment constitutes irreparable harm only in a "genuinely extraordinary situation," *Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974), and Plaintiff does not even attempt to argue that he meets this high bar. Rather, he casts his claim of irreparable harm as a deprivation of a "statutory right to function" as the head of OSC, *see* Pl.'s Mem. of Law in Support of Pl.'s Mot. for a Temporary Restraining Order ("Pl.'s Mot.") at 15, ECF No. 2-1. But in *English v. Trump*, another district court in this Circuit rejected the identical argument in analogous circumstances. 279 F. Supp. 3d 307, 333 (D.D.C. 2018) (holding that loss of status as Acting CFPB director did not constitute irreparable harm to plaintiff). And if Plaintiff asserts irreparable harm to the functioning of OSC itself, that assertion is misplaced, both because OSC can continue to function with an Acting Special Counsel (who had already assumed Plaintiff's role before this Court's administrative stay) and because Plaintiff would lack standing to raise such a harm.

*Third*, the balance of the equities and public interest favor Defendants. The relief that Plaintiffs seek—an order requiring the President to reinstate a person who he has chosen to remove from office—is unprecedented. And with good reason: such an order would greatly impede President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203.

2

Allowing Plaintiff to exercise executive power over the President's objection unquestionably inflicts irreparable harm on both the Executive and the separation of powers.

Because the merits and the other temporary restraining order factors all cut against Plaintiff, his motion for extraordinary preliminary relief should be denied.

## BACKGROUND

### I.    Statutory Background

Congress created the Office of the Special Counsel as part of the Civil Service Reform Act of 1978.  Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 1122.  The Act authorized the Special Counsel to receive and investigate "any allegation of a prohibited personnel practice," 92 Stat. at 1125, and to request corrective action from the Merit Systems Protection Board in cases where agency heads declined to correct impermissible practices, *id.* at 1127, among other powers.  The Act provided that the Special Counsel could "be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

From the beginning, the Executive Branch objected to the constitutionality of that removal restriction.  In a published opinion, the Carter Administration's Office of Legal Counsel explained that "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." *Memorandum Opinion for the General Counsel, Civil Service Commission*, 2 Op. OLC 120, 122 (1978); *see Seila Law*, 591 U.S. at 221 (noting this "contemporaneous constitutional objection").  And when Congress passed an initial version of the Whistleblower Protection Act in 1988, separating OSC from the Merit Systems Protection Board and vesting OSC with additional powers, President Reagan pocket-vetoed the legislation, explaining that it "raised serious constitutional concerns" by, among other things, "purport[ing] to insulate the Office from presidential supervision and to limit the power of the President to remove his subordinates from office."  Public Papers of the Presidents, Ronald Reagan, Vol. II, Oct. 26, 1988, pp. 1391-1392 (1991); *see Seila Law*, 591 U.S. at 221 (citing this "veto on constitutional grounds").

Congress ultimately passed a revised version of the Whistleblower Protection Act that separated OSC from the Merit Systems Protection Board while removing certain of the additional

3

powers that the initial version would have granted the Office. Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16. President George H.W. Bush signed that bill, notwithstanding its maintenance of the restrictions on removal of the Special Counsel. But the Executive Branch did not recede from its constitutional objection to Congress's placement of restrictions on the removal of agency heads. In 1994, for example, the Office of Legal Counsel advised President Clinton "that the [Social Security Administration]'s new structure as an agency led by a single person with tenure protection was 'extraordinary'" and that the tenure protection presented a "'serious constitutional question'" because it "'would severely erode the President's authority.'" *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. __, 2021 WL 2981542, at *2 (O.L.C. July 8, 2021) (quoting Letter for Lloyd N. Cutler, Counsel to the President, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel (July 29, 1994)).

Today, OSC exercises both the same powers as it originally possessed and more. The Special Counsel is vested with an array of executive powers and functions, including a broad range of investigatory and disciplinary powers. *See* 5 U.S.C. § 1212. For example, the Act provides that the Special Counsel "shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken," *id.* § 1214(a)(1)(A), but it also permits the Special Counsel to conduct such an investigation "in the absence of an allegation," *id.* § 1214(a)(5). The Special Counsel has the authority to "examine witnesses, take depositions, and receive evidence," as well as to "issue subpoenas" and "order the taking of depositions and order responses to written interrogatories." *Id.* § 1212(b)(1)-(2). The Special Counsel can also "bring petitions for stays, and petitions for corrective action," and "file a complaint or make recommendations for disciplinary action" to the Merit Systems Protection Board. *Id.* § 1212(a)(2)(A)-(B). That can result in "removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, or reprimand." *Id.* § 1215(3)(a). And in 2017, Congress enhanced OSC's investigatory powers, including by barring any assertions of common law privileges that would "prevent the Special Counsel from obtaining any material" within its purview. *See id.* § 1212(a)(5)(C)(i);

4

Pub. L. No. 115-91, §1097(a), 131 Stat. 1615 (2017).

## II.     The Present Controversy

Plaintiff was appointed to serve as Special Counsel by President Biden in October 2023, and confirmed by the Senate in February 2024. Compl. ¶ 30. He was sworn in on March 6, 2024. *Id.* ¶ 1. On February 7, 2025, the Director of the White House Presidential Personnel Office informed Plaintiff that he was being removed from his position as Special Counsel, effective immediately. *Id.* ¶ 2. On February 10, 2025, Plaintiff filed this lawsuit. *See generally* Compl. Later that day, he also filed a motion for a temporary restraining order, requesting that he be reinstated as Special Counsel. *See* ECF No. 2. Upon receiving the motion, the Court set a near-immediate hearing, before the government had responded to the motion for a temporary restraining order.

Several hours later, the Court entered what it described as "a brief administrative stay," reasoning that the stay was necessary "to preserve the status quo." The Court's order temporarily restored Plaintiff to the office of Special Counsel and enjoined defendants from "deny[ing] him access to the resources or materials of that office or recogniz[ing] the authority of any other person as Special Counsel." Feb. 10, 2025 Minute Order. Defendants have since appealed that order and are seeking emergency relief in the U.S. Court of Appeals for the District of Columbia Circuit. ECF No. 7.

## LEGAL STANDARD

Plaintiff seeks a temporary restraining order—"an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). To obtain such extraordinary relief, a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'" *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to preliminary injunctive relief[.]" (cleaned up)). When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff must do more than merely show the possibility of prevailing on the merits, but rather must show "a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff also must establish irreparable harm, as failure do so is "grounds for refusing to issue [preliminary relief], even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *accord* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) (irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction" as "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief").

Mandatory injunctions that "would change the status quo" are disfavored as "an even more extraordinary remedy" than the typical preliminary injunction, "especially when directed at the United States Government." *Kondapally v. USCIS*, No. CV 20-00920 (BAH), 2020 WL 5061735, at *3 (D.D.C. Aug. 27, 2020) (citations omitted); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969))). "Plaintiffs seeking this type of relief . . . face 'an additional hurdle' when proving their entitlement to relief," and courts "exercise extreme caution in assessing" such motions. *Kondapally*, 2020 WL 5061735, at *3. "As a rule, when a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (cleaned up).

## ARGUMENT

Plaintiff fails to satisfy any of the factors necessary for the extraordinary remedy he seeks—a mandatory temporary restraining order compelling Defendants, including the President, to reinstate him to a position from which he has been removed. Such an order would be unprecedented and unwarranted.

### I.     Plaintiff Cannot Succeed On The Merits

OSC is an Executive Branch agency "headed by a single officer," *Seila Law*, 591 U.S. at 221. As described above, from the time OSC was first created in 1978, and across several administrations in the years since, the Executive Branch has expressed doubt as to whether Congress may preclude the President from removing the Special Counsel at will. Over the past five years, Supreme Court precedent has definitively resolved that question in the negative. Officials vested with sole responsibility for overseeing the exercise of executive power must be directly answerable to the President.

#### A.     At will removal is the general rule, and OSC does not fit within any exceptions.

Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). To discharge those responsibilities, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enterprise Fund v. Public Accounting Oversight Board*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514.

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 203. First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, the Court has held that "Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties." *Id.* at 204.

The Special Counsel does not fit within either of these exceptions. He is not an inferior officer with narrowly defined duties—he is a principal officer appointed by the President with Senate confirmation, *see* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1211(b), who oversees his own Department

7

and is not subservient to any other principal officer, *see* 5 U.S.C. §§ 1211-1212. *See also Free Enterprise Fund*, 561 U.S. at 511 (explaining that a Department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). Nor does the Special Counsel work as part of a "multimember expert agency," *Seila Law LLC*, 591 U.S. at 218; he instead serves as the sole head of his agency, 5 U.S.C. § 1211(a).

**B.     Heads of single-member Executive departments must be removable at will by the President.**

Five years ago, the Supreme Court surveyed the Executive Branch and identified only four then-existing examples of single-member agencies whose heads were afforded protection against at-will removal. *See Seila Law*, 591 U.S. at 290-92. As described below, the Supreme Court has now itself invalidated the removal protections for two of these agencies (the CFPB and the FHFA). The Office of Legal Counsel and two courts of appeals have concluded that the removal protections for a third (the Social Security Administration) are likewise invalid. The Office of Special Counsel is the fourth.

In *Seila Law*, the Supreme Court invalidated the removal restrictions for the Director of the Consumer Financial Protection Bureau, explaining that the "single-Director structure contravenes" the Constitution's "carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one." 591 U.S. at 224. When the Founders chose to vest executive authority in a single person, they ensured that the President would be "the most democratic and politically accountable official in Government . . . elected by the entire Nation." *Id.* Thus, while executive officers obviously assist the President in carrying out his responsibilities, they "remain[] subject to the ongoing supervision and control of the elected President." *Id.* By contrast, the CFPB Director could "*unilaterally*, without meaningful supervision, issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose," *id.* at 225, while the President was constrained to permit the Director to do so absent "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(3). The Court held that restriction unconstitutional, holding that "principal officers who, acting alone, wield significant

8

executive power" must be removable at will by the President. *Seila Law*, 591 U.S. at 238.[1]

The Supreme Court applied the same logic when it invalidated the "for cause" removal restriction for the Director of the Federal Housing Finance Agency. *Collins*, 594 U.S. at 226-28. The Court explained that *Seila Law* was "all but dispositive," as the FHFA was "an agency led by a single Director" for whom Congress had "restrict[ed] the President's removal power." *Id.* at 250-51. In doing so, the Court rejected an argument that the FHFA should be treated differently because it did not exercise as much executive authority as the CFPB did. *Id.* at 251. "[T]he nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." *Id.* at 251-52. The key purpose of the removal power is to ensure that "Executive Branch actions" are subject "to a degree of electoral accountability," which is "implicated whenever an agency does important work." *Id.* at 252. *Collins* thus declined to carve out an exception to the general rule of at-will removal based on "the relative importance of the regulatory and enforcement authority of disparate agencies." *Id.* at 253.

Consistent with those holdings, President Biden removed the Commissioner of Social Security without cause, contrary to the statutory limitations that restricted removal over that agency head except for "neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3); *see L.M. v. Commissioner*, 2021 WL 8268034, at *1 (M.D. Ga. Dec. 3, 2021). In supporting the legality of that decision, the Department of Justice explained that "the best reading of *Collins* and *Seila Law*" led to the conclusion that "the President need not heed the Commissioner's statutory tenure protection." *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ---, 2021 WL 2981542, at *1, 7 (O.L.C.

---

[1] Plaintiff attempts to distinguish this case by selectively quoting from the Supreme Court's statement in *Seila Law* that OSC does not "wield regulatory authority comparable to the CFPB." *See* Pl.'s Mot. at 11-12 (citing *Seila Law*, 591 U.S. at 221). In fact, the Supreme Court cast doubt on the viability of the Special Counsel's removal protections, noting that OSC was "created nearly 200 years after the Constitution was ratified" and "drew a contemporaneous constitutional objection from the Office of Legal Counsel under President Carter and a subsequent veto on constitutional grounds by President Reagan." *Seila Law*, 591 U.S. at 221. The Court then characterized the SSA and FHFA in similar terms, *id.* at 221-22, and as explained, the removal protections for the heads of those agencies have since been held unconstitutional.

July 8, 2021). Perhaps unsurprisingly, the only courts of appeal to have considered the question—the Ninth and Eleventh Circuits—have both concluded that the removal restrictions for the single-headed Social Security Administration are unconstitutional. *Rodriguez v. SSA*, 118 F.4th 1302, 1313-14 (11th Cir. 2024); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022).

There is no doubt that the Special Counsel exercises executive authority: He may "investigate allegations of prohibited personnel practices," 5 U.S.C. § 1212(a)(2); "bring actions concerning allegations of violations of other laws within the jurisdiction of" his office, *id.* § 1212(a)(4); issue subpoenas, *id.* § 1212(b)(2)(A); intervene in other proceedings before the Merit Systems Protection Board, *id.* § 1212(c)(1); appoint others, *id.* § 1212(d)(1); prescribe regulations, *id.* § 1212(e); appear in federal court as an amicus curiae, *id.* § 1212(h)(1); and bring disciplinary actions against federal employees, *id.* § 1215(a)(1). These are core executive functions.[2] *See, e.g.*, *Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 531 (6th Cir. 2024) (recognizing in the context of the NLRB General Counsel that "[t]he authority to initiate or dismiss complaints is a purely executive, not judicial, function" and "is squarely on the prosecutorial side of the 'prosecutorial versus adjudicatory line'"). Indeed, Plaintiff himself, represented at the time by the Department of Justice, has argued that the Special Counsel engages in core executive functions like investigation and prosecution. Final Appellee Br., *America First Legal Foundation v. Dellinger*, No. 24-5168 (D.C. Cir.), at 15-16.

Notwithstanding Plaintiff's attempt to minimize the significant executive authority wielded by OSC, *see* Pl.'s Mot. at 12-13, its exercise of that authority clearly implicates the faithful execution of

---

[2] Plaintiff strains to describe OSC as "quasi-legislative," Pl.'s Mot. at 13, but only references OSC's ability to enforce compliance "with congressionally imposed ethical and personnel requirements" and the requirement that OSC transmit to Congress upon request "the Special Counsel's views on functions, responsibilities, or other matters relating to the Office" and a report when "an allegation submitted to the Special Counsel is resolved by an agreement between an agency and an individual," 5 U.S.C. § 1217. These are plainly not quasi-legislative functions, which the Supreme Court has "[b]ack[ed] away from" relying on in any event. *Seila Law*, 591 U.S. at 217. Indeed, OSC's authority to enforce federal statutes only underscores that its power is akin to that of a federal prosecutor, who exercises a core executive function.

federal law.³ As the Carter Administration explained in 1978, "the Special Counsel's functions are executive in character" and his "role in investigating and prosecuting prohibited practices is much the same as that of a U.S. Attorney or other Federal prosecutors," which "are directed at the enforcement of the laws." *Memorandum Opinion for the General Counsel*, Civil Service Commission, 2 Op. OLC at 120. For these reasons, the Carter Administration objected to the Office of Special Counsel when it was first created, explaining that "Congress may not properly limit the grounds for removal of the Special Counsel by the President," because the Special Counsel "must be removable at will." *Id.* Even at that time, before *Seila Law* and *Collins*, it was clear that *Humphrey's Executor* did "not extend to an officer appointed by the President with the advice and consent of the Senate, who performs predominantly executive functions and who, by reason of the statutory scheme, is independent of the quasi-judicial process." *Id.* at 122. And President Reagan reiterated those "serious constitutional concerns" about the Special Counsel's insulation from electoral accountability. *See* Public Papers of the Presidents, Ronald Reagan, Vol. II, Oct. 26, 1988, pp. 1391-1392 (1991). Since that time, these serious constitutional concerns have only been heightened, as evidenced by the Supreme Court's recent pronouncements that similar restrictions are unconstitutional.

### C. Plaintiff cannot show entitlement to reinstatement.

If that were not enough, Plaintiff is deeply mistaken in seeking judicial reinstatement to a principal office. When principal officers have been removed from their posts, they have challenged that removal in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers v. United States*, 272 U.S. 52, 106 (1926) (same); *Wiener v. United States*, 357 U.S. 349, 349-351 (1958) (same). The President cannot be compelled to retain the services of a principal officer who the President no longer believes should be entrusted with the exercise of executive power. Such a remedy would undermine the objective of electoral

---

³ To the extent Plaintiff claims that OSC exercises a more "limited" set of executive functions, Pl.'s Mot. at 12, the Supreme Court expressly rejected this argument in *Collins*, explaining that "the nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." 594 U.S. at 251-52.

accountability within the Executive Branch that animated the holdings in *Seila Law* and *Collins*.

## II.     Plaintiff Fails To Identify Any Irreparable Harm

The "high standard for irreparable injury"—even higher here insofar as Plaintiff requests a mandatory injunction that would alter the status quo, *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)—requires a two-fold showing by Plaintiff:  First, because an irreparable injury "must be both certain and great," Plaintiff "must show 'the injury complained of is of such *imminence* that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  And second, "the injury must be beyond remediation." *Id.*

Plaintiff has failed to meet his burden for either of the two required showings.  He principally contends that his ongoing harm stems from his inability "to serve as the lawful agency head of the OSC."  Pl.'s Mot. at 14-15.  But only in a "genuinely extraordinary situation" may loss of employment constitute irreparable harm.  *Sampson*, 415 U.S. at 92 & n.68.  And this is not such a situation.  *See id.* at 89-92 (holding loss of income, face, and reputation do not amount to irreparable harm).  Indeed, court after court in this Circuit and others have concluded that loss of employment does not constitute irreparable harm.  *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65-66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury"). And to the extent that Plaintiff attempts to distinguish his former position from a "garden-variety employment dispute," Pl.'s Mot. at 16, courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower);

12

*Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, No. 88-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).

Plaintiff also argues that his purported deprivation of his "statutory right to function" as the head of OSC constitutes irreparable harm. Pl.'s Mot. at 15. But the district court in *English v. Trump* rejected an identical argument, holding that the plaintiff could not show that deprivation of her purported status as Acting Director of the CFPB constituted irreparable harm. 279 F. Supp. 3d at 333-36. Plaintiff omits any citation to *English* (despite his counsel having appeared as counsel of record in that case), instead relying solely on two cases that are plainly distinguishable and that were both later vacated by the D.C. Circuit: *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated*, 732 F.2d 949 (D.C. Cir. 1983), and *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C.), *vacated sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993).

Indeed, *English* held that the district court's vacated analysis in *Berry v. Reagan* did not control for reasons that apply here with equal force. In *Berry*, President Reagan removed several members of the Commission on Civil Rights, an action that dissolved the Commission and meant that it could not complete a report it was statutorily required to complete by a date certain. *Id.* at *1, *5. But like in *English*, Plaintiff and OSC "are not similarly situated" to the plaintiffs in *Berry*, as OSC "continues to operate" with Ms. Gorman "functioning as acting" Special Counsel. *English*, 279 F. Supp. 3d at 335. And like in *English*, "any such harm" to Plaintiff coming solely from him not functioning as the Special Counsel "can be remediated in the ordinary course of this case." *Id.* That stands in contrast to *Berry*, in which "any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it." *Id.*

Similarly, in *Mackie v. Bush*, the President sought to remove the majority of the Board of Governors of the Postal Service Board, an action that would "be irrevocably disruptive of the Board's function." 809 F. Supp. at 146. As noted, OSC is perfectly capable of functioning without Plaintiff, just as it did before he became Special Counsel less than one year ago. Moreover, in *Mackie*, the district court entered an injunction preventing the removal of the governors *before* their removal was

13

effectuated, *id.* at 148—it did not reinstate an officer who had already been removed, as Plaintiff requests this Court do here.

Plaintiff's remaining claims of irreparable harm are similarly unavailing. Plaintiff first claims that a temporary restraining order is warranted because another person could be nominated and confirmed such that his claim would be moot. Pl.'s Mot. at 15. This argument is specious—as Plaintiff well knows, Plaintiff's own nomination occurred 147 days before he was confirmed, Compl. at 8, and a temporary restraining order lasts at most 28 days, Fed. R. Civ. Pro. 65(b)(2).

Plaintiff next argues that denying him preliminary relief would deprive OSC of the "ability to fulfill" its "mandate." Pl.'s Mot. at 15 (citing *Berry*, 1983 WL 538, at *5). But as explained, unlike in *Berry*, OSC can continue to fulfill its mandate without Plaintiff, since the Acting Special Counsel has stepped into his role. In any event, Plaintiff would have no standing to claim he is suffering this purported harm, since he is neither a whistleblower nor a party subject to OSC's authority. *See Allen v. Wright*, 468 U.S. 737, 758 (1984). Even assuming any injury attributable to a lack of ability for OSC to fulfill its mandate (which there is not), that is not an injury to Plaintiff, but one to the interests of the public and of the United States. And those interests have to be informed and defined by the Executive, who has determined that Plaintiff's service as the Special Counsel is no longer in the best interests of the public.

Finally, Plaintiff asserts—without any supporting evidence—that Plaintiff's removal "may result in individuals who lack lawful authorization" accessing OSC information. Pl.'s Mot. at 15-16. This argument is entirely speculative and lacks any basis in the record of this case. And again, Plaintiff's alleged injury stems from the removal of his job duties, not from any hypothetical injury concerning the information of others. *See Warth v. Seldin*, 422 U.S. 490, 493 (1975). He may not obtain a temporary restraining order based on irreparable harm to some other, unidentified individuals.

### III. The Balance Of Equities And Public Interest Favor Defendants

Granting the extraordinary relief requested would be an unprecedented intrusion into the President's authority to exercise "all of" "the 'executive Power'" of the United States. *Seila Law*, 590 U.S. at 203. Defendants are unaware of any historical precedent where a federal court reinstalled a

14

single agency head of the United States after the President has removed him. That sort of harm to the Executive, and to the constitutional separation of powers, is transparently irreparable.

Moreover, the public interest is better served by a Special Counsel who holds the President's confidence, and thus will more effectively serve him in executing his duties as Commander-in-Chief. And "the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). The public interest is best served by maintaining this traditional deference to the government's internal management of its own personnel.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's motion for a temporary restraining order.

Dated: February 11, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*