UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel,<br><br>Plaintiff,<br><br>-against-<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, KAREN GORMAN, in her official capacity as Principal Deputy Special Counsel and, upon the purported removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel, KARL KAMMANN, in his official capacity as the Chief Operating Officer of the Office of Special Counsel, DONALD J. TRUMP, in his official capacity as President of the United States of America, and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br><br>Defendants. | Civil Case No. 25-cv-000385 (ABJ) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY THE ADMINISTRATIVE STAY**

Kate L. Doniger*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
kdoniger@heckerfink.com

Joshua A. Matz, Bar No. 1045064
Jackson Erpenbach, Bar No. 1735493
Benjamin Stern*
HECKER FINK LLP
1050 K Street NW
Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
jerpenbach@heckerfink.com
bstern@heckerfink.com

*Applications for pro hac vice pending*              *Attorneys for Plaintiff Hampton Dellinger*

We write on behalf of Special Counsel Hampton Dellinger to respond to the Defendants' Motion to Stay the Court's Administrative Stay. *See* ECF 10. This Court should deny that motion to stay, for three reasons. *First*, the Court of Appeals lacks jurisdiction to consider the Defendants' appeal. *Second*, the Defendants' litigation conduct militates against affording them discretionary, equitable relief. *Finally*, and in all events, the arguments advanced by Defendants lack merit.

## I. The Defendants' Appeal is Jurisdictionally Improper

The Defendants' request "to stay the Court's administrative stay pending appeal" fails at the outset because there is no jurisdictional basis for the D.C. Circuit to review this Court's order. Mot. at 1. The absence of appellate jurisdiction defeats any basis to stay proceedings here.

It is black-letter law that the grant of a temporary restraining order is presumptively not appealable. *See* 28 U.S.C. § 1292(a)(1); *e.g.*, *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159 (3d Cir. 2020); *Native Vill. of Chenaga Bay v. Lujan*, No. 91-5042, 1991 WL 40471, at *1 (D.C. Cir. Mar. 8, 1991) (per curiam); *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1977) (per curiam). The principal exception to that rule—which the Defendants do not even cite here, but do cite in their filing this morning with the D.C. Circuit—is narrowly limited to cases in which a TRO effectively operates as a preliminary injunction. *See* No. 25-5025, Doc. 2099980, at 18-21 (Feb. 11, 2025).

In no sense of the term was this Court's order last night the equivalent of a preliminary injunction. To provide itself a short window to more fully consider the Defendants' legal position before deciding Special Counsel Dellinger's TRO motion, this Court issued an administrative stay to maintain the status quo by keeping Special Counsel Dellinger in the same office he occupied at 7:22 PM on February 7, 2025 (before the President purported to terminate him). *See* Minute Order, 8:20 PM, Feb. 10, 2025. By its own terms, that abbreviated administrative stay expires "midnight on February 13, 2025." *Id.* It is thus far more transient than even an *ex parte* TRO, which can be

issued for up to 14 days without any right for defendants to appeal. *See* Fed. R. Civ. P. 65(b)(2). The Defendants are plainly mistaken in their efforts to reframe this Court's brief administrative stay (which expires in a few days) as a *de facto* preliminary injunction that decides issues of great significance and would otherwise persist for months or years through the pendency of the case.

Alternatively, in a throw-away paragraph near the end of their brief (with no explanation or application of the relevant legal standard), Defendants have asked the D.C. Circuit to exercise its extraordinary mandamus jurisdiction. *See* No. 25-5025, Doc. 2099980, at 21. But neither in this Court nor the D.C. Circuit have the Defendants even purported to explain how that could authorize the relief they seek—or why it would justify the remedy of a stay in this Court, particularly given the abbreviated nature of this Court's order while the substance of the TRO motion is resolved.

## II.     The Defendants' Litigation Conduct Undercuts Their Request

Alternatively, the Defendants' motion should be denied based on their own conduct in this litigation. On Friday evening, the President took the unprecedented decision to terminate (in a one-sentence email) the Senate-confirmed head of the independent Office of Special Counsel. In so doing, he violated statutory for-cause removal protections. That action broke with the position of Presidents of both parties, of President Bush's own Attorney General (who "pledged" to lobby for the Whistleblower Protection Act of 1989), and of the U.S. Justice Department's Office of Legal Counsel (which has properly distinguished the Office of Special Counsel from the agencies at issue in *Seila Law* and *Collins* and from the Social Security Administration). Pl. Br. at 4-7, ECF 2-1.

Nevertheless, when called to Court, the Defendants seemed unprepared to meaningfully explain or defend President Trump's conduct—offering only a glancing discussion of the merits that materially misstated the Executive's own history on the issue. *See* Feb. 10, 2025 Tr., ECF 9.

At that hearing, the Court made a reasonable request of the Defendants: to allow the Special Counsel to remain in office for a couple days while these issues are sorted. But they rejected that

2

accommodation. Instead, they proposed—and the Court agreed to—an expedited schedule in which the Defendants would file an opposition to Special Counsel Dellinger's TRO motion by noon today. Counsel for the Defendants stated, "We can definitely make that happen and we will do that." Feb. 10, 2025 Tr. at 27:23-24. With that schedule in mind, the Court made clear that it might also issue an "an administrative stay that holds everything in abeyance until I've had an opportunity at least to read that and rule on the motion for temporary restraining order." *Id.* at 25:8-11. Yet despite ample opportunity, counsel to the Defendants did not object to that specific form of relief (other than reiterating her general objections to a TRO). Nor did she indicate that the Defendants would appeal, seek mandamus, demand a stay, or otherwise seek emergency relief from the D.C. Circuit, let alone that they would do so within an hour of this Court's order.

This Court acted in reasonable reliance on the Defendants' representations by allowing them time to file an opposition to Mr. Dellinger's motion and granting a brief stay preserving the status quo. Based on the short-lived administrative stay timeframe and the swift deadline for the Defendants' opposition, this Court presumably intended to rule on the merits of Special Counsel Dellinger's TRO motions in an expedited manner. Nevertheless, in clear disregard of this Court's expedited and diligent consideration of the issues—as well as its accommodation of their desire for a rapid briefing schedule—the Defendants have manufactured a baseless appellate emergency where none is warranted and where they cannot establish appellate jurisdiction to even press their position. This unusual litigation conduct does not warrant a stay and, if anything, undercuts any equitable basis for relief.

### III. The Defendants' Remaining Arguments Lack Merit

For the reasons given in Special Counsel Dellinger's opening brief, this Court should grant the TRO. Although the Defendants rely principally on *Seila Law* and *Collins*, Mot. at 2, both of those cases expressly carved out the Office of Special Counsel from their holdings, Pl. Br. at 11-

3

12; *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 221 (2020); *Collins v. Yellen*, 594 U.S. 220, 256 n.21 (2021). The Defendants also cite cases about the Social Security Administration, while failing to mention that the Department of Justice Office of Legal Counsel singled out and distinguished the OSC in its discussion of statutory for-cause removal protections. *See* Pl. Br. at 7; *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *9 (O.L.C. July 8, 2021). More fundamentally, the Defendants hardly offer any response at all to the arguments set forth by Special Counsel Delinger on these points.

The Defendants also echo the same points about irreparable harm that they made to this Court yesterday evening, relying on a single district court case that this Court has already had an opportunity to consider. Mot. at 3 (citing *English v. Trump*, 279 F. Supp. 3d 307, 336 (D.D.C. 2018)). Throughout American history, there have been very few circumstances (until recently) in which a President removed an agency head who enjoyed for-cause removal protections. And even fewer of those cases have been litigated. So there is unavoidably sparse precedent that speaks to the precise question here: whether a Senate-confirmed agency head who is terminated in violation of for-cause removal protections can obtain any interim relief while litigating their case in court.

Still, as explained in Special Counsel Dellinger's TRO brief and at the hearing, there are multiple, independent bases for irreparable harm here. *First*, he has been deprived of his statutory right to function in his office, following the appointment of the President and confirmation by the Senate to an office with for-cause removal protections. Br. 15-16; *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam); *Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam). The distinctions that the Defendants seek to draw miss the crucial point: that the unlawful removal of an agency head who has been confirmed and vested with authority to carry out certain functions inflicts a distinct injury to that official by

depriving him of his ability to carry out the statutorily vested functions that he has personally been charged with performing. The Defendants' reliance on cases involving private employment and more junior executive branch personnel is thus misplaced. When the President nominates and the Senate confirms a person to execute specific official functions, and that person is unlawfully fired, they suffer an immediate and irreparable loss of their legally vested right to personally function in that agency leadership position.

*Second*, accepting the Defendants' view of irreparable injury would effectively nullify the value of *any* statutory for-cause provision, including that applicable to Special Counsel Dellinger. If the President can unlawfully fire officials despite for-cause removal protections, and the fired officials cannot receive *any* judicial remedy until months or years later—following the resolution of full merits proceedings (and potentially any appeals)—then for-cause removal protections are worth precious little, and the century of ink and energy that have been devoted to establishing agency independence has been largely in vain. (The Defendants now assert that illegally fired officials can *never* be reinstated, and instead can only receive backpay, which would truly drain for-cause removal protections of their purpose.) The oddity of this view, which would render for-cause removal protections granted to Senate-confirmed officials such as Special counsel Dellinger of little practical import, and which would undermine a major premise of agency independence (reassuring agency heads that they can function in office with a measure of protection from direct presidential control), counsels forcefully against accepting it here.

*Third*, and finally, removal of the Special Counsel, especially at this pivotal point in time, could cause irreparable harm to the functioning of the OSC, a small agency in which the Special Counsel plays a singular role in ensuring the protection of whistleblowers and their confidentiality as required by statute. Br. 15-16; Feb. Tr. at 18:14-20:1; *e.g.*, 5 U.S.C. § 1212(h).

Indeed, the irreparable harm to Special Counsel Dellinger in both his personal and official capacity is even more obvious now than it was yesterday. The President has already developed a track record of removing independent agency heads (whether lawfully or unlawfully) and then appointing an acting head in their place, only for the acting head to bring the agency's work to an immediate (and possibly indefinite) halt. *See, e.g.*, Stacy Cowley, *Confusion Reigns as 'a Wrecking Ball' Hits the Consumer Bureau*, N.Y. Times (Feb. 10, 2025).[1] Last night, the President purported to appoint a new Acting Special Counsel to lead the Office of Special Counsel. *See* Chris Cameron, *A judge blocked Trump's firing of a government watchdog*, N.Y. Times (Feb. 10, 2025).[2] That decision directly contradicts a key premise for the Defendants' arguments against irreparable harm, which was that the OSC could continue to function smoothly because the Special Counsel would be replaced in the interim by the Acting Special Counsel, a career Principal Deputy Special Counsel. *See* Feb. 10 Tr. at 4:2-4, 26:10-14. Now, instead, the President has purportedly named as Acting Special Counsel Doug Collins—who is somehow expected also to serve as the Senate-confirmed Secretary of the Department of Veterans Affairs and as the new Acting Director of the Office of Government Ethics. These actions present a clear and immediate threat to the OSC's functioning at a time that its statutory role in protecting whistleblowers is most needed. And that injury is properly asserted by Special Counsel Dellinger: in assessing irreparable injury, the Court assumes that the plaintiff will prevail on the merits, and thus Special Counsel Dellinger may rightly assert injuries that will befall him personally as well as the agency he is charged with leading.

*Finally*, the Defendants claim that by allowing Special Counsel Dellinger to remain in office on an interim basis, this Court has worked an "intrusion into the President's authority to

---

[1] Available at https://www.nytimes.com/2025/02/10/business/cfpb-shutdown-confusion.html.

[2] Available at https://www.nytimes.com/live/2025/02/10/us/trump-news?smid=url-share#a-judge-blocked-trumps-firing-of-a-government-watchdog.

exercise "all of" "the 'executive Power'" of the United States." Mot. at 2-3 (quoting *Seila Law*, 590 U.S. at 203). But this both confuses the likelihood of success on the merits factor with the irreparable harm factor of the stay analysis, and fails to make any showing of actual irreparable harm. Whether Congress' determination to grant the Special Counsel for-cause protection in the CSRA is an affront to "the constitutional separation of powers" is a question for the Court's analysis of the merits. Moreover, the Defendants make no serious attempt to detail what actual harm will result from Mr. Dellinger continuing to function as Special Counsel while this Court rules on the pending TRO application. This lack of harm further follows from the Defendants' effective concession that there is no basis on which to terminate Mr. Dellinger for cause.

Thus, Special Counsel Dellinger respectfully requests that the stay motion be denied.

Respectfully submitted,

/s/ *Joshua A. Matz*

| | |
|---|---|
| Kate L. Doniger* | Joshua A. Matz, Bar No. 1045064 |
| HECKER FINK LLP | Jackson Erpenbach, Bar No. 1735493 |
| 350 Fifth Avenue, 63rd Floor | Benjamin Stern* |
| New York, New York 10118 | HECKER FINK LLP |
| (212) 763-0883 | 1050 K Street NW |
| kdoniger@heckerfink.com | Suite 1040 |
| | Washington, DC 20001 |
| | (212) 763-0883 |
| | jmatz@heckerfink.com |
| | jerpenbach@heckerfink.com |
| | bstern@heckerfink.com |

*Attorneys for Plaintiff Hampton Dellinger*

*admitted pro hac vice

DATED: February 11, 2025