UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel,<br><br>Plaintiff,<br><br>-against-<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, KAREN GORMAN, in her official capacity as Principal Deputy Special Counsel and, upon the purported removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel, KARL KAMMANN, in his official capacity as the Chief Operating Officer of the Office of Special Counsel, DONALD J. TRUMP, in his official capacity as President of the United States of America, and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br><br>Defendants. | Civil Case No. 25-cv-00385 (ABJ) |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

Kate L. Doniger*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
kdoniger@heckerfink.com

Joshua A. Matz, Bar No. 1045064
Jackson Erpenbach, Bar No. 1735493
Benjamin Stern*
HECKER FINK LLP
1050 K Street NW
Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
jerpenbach@heckerfink.com
bstern@heckerfink.com

*Admitted pro hac vice

*Attorneys for Plaintiff Hampton Dellinger*

Special Counsel Dellinger filed suit because he was unlawfully removed from office without cause, in violation of his clear statutory for-cause removal protection. *See* 5 U.S.C. § 1211(b). The government nowhere denies that it violated this statutory limitation. Instead, it advances two arguments: first, that the for-cause removal provision is unconstitutional; and second, that even if the provision is constitutional, this Court is powerless to order reinstatement. This Court has already rejected, based on its first impressions, the government's argument that Special Counsel Dellinger can be removed from office without cause. *See Dellinger v. Bessent*, No. 25 Civ. 385, 2025 WL 471022, at *5 (D.D.C. Feb. 12, 2025). It is even more apparent now that both of the government's arguments lack merit. Special Counsel Dellinger continues to be likely to succeed on the merits of his claims that President Trump violated the law in terminating him and that the other Defendants may not lawfully treat this purported termination as valid. Special Counsel Dellinger is also suffering clear irreparable injury based on the deprivation of his statutory right to function in office. And the equities and the public interest both favor interim relief to preserve the *status quo* while these issues are more fully adjudicated. This Court should enter a preliminary injunction (1) declaring on an interim basis that President Trump's removal of Special Counsel Dellinger from office, and any recognition of an Acting Special Counsel in his place, is unlawful, and that Mr. Dellinger is the Special Counsel; and (2) enjoining the Defendants other than President Trump from removing Special Counsel Dellinger from his office or in any way treating him as having been removed, denying or obstructing Mr. Dellinger access to any of the benefits or resources of his office, placing an Acting Special Counsel in Mr. Dellinger's position, or otherwise recognizing any other person as Special Counsel or as the head of the Office of Special Counsel, pending further order of the Court.[1] *See* Order at 10 n.1, No. 25-5028 (D.C.

---

[1] In response to this Court's February 15, 2025 Minute Order, Special Counsel Dellinger files this reply to the opposition to his motion for a temporary restraining order, now deemed to be a motion

Cir. Feb. 15, 2025) ("[T]he TRO is properly read as not applying directly to the President but rather to the other defendants acting on his behalf.").

I.   **Special Counsel Dellinger Has a Substantial Likelihood of Success on the Merits.**

Special Counsel Dellinger is substantially likely to prevail on his claims, all of which rest on the premise that he has been unlawfully removed from office in violation of statutory for-cause removal protection that govern the OSC. *See* 5 U.S.C. § 1211(b). The government argues that the Supreme Court's decisions in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), and *Collins v. Yellen*, 594 U.S. 220 (2021), compel the conclusion that § 1211(b) violates the separation of powers. As this Court already explained, however, "the Supreme Court has taken pains to carve the OSC *out* of its pronouncements concerning the President's broad authority to remove officials who assist him in discharging his duties at will." *Dellinger*, 2025 WL 471022, at *5; *see also* Order at 14, No. 25-5028 (D.C. Cir. Feb. 15, 2025) ("[T]he cited cases do not hold that the President has unrestricted power to remove the Special Counsel."). Taken together, *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935), *Seila Law*, and *Collins* all support the constitutionality of the OSC's for-cause removal limitation based on two independent reasons: (a) the Special Counsel is an inferior rather than principal officer (and those cases all concerned principal officers); and (b) the central reasons given for invalidating for-cause removal restrictions in *Seila Law* and *Collins* do not apply here. And the government errs by claiming that this Court has no authority to order the relief Special Counsel Dellinger seeks.

---

for a preliminary injunction. *See Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (same legal standard applies to evaluating motion for preliminary injunction and motion for temporary restraining order). "Br. ___" refers to Plaintiff's opening brief in support of a TRO, ECF 2-1. "Opp. ___" refers to the government's brief in opposition to a TRO, ECF 11.

2

**a.** For inferior officers, Congress can "limit and restrict the power of removal as it deems best for the public interest." *United States v. Perkins*, 116 U.S. 483, 485 (1886); *see also Myers v. United States*, 272 U.S. 52, 161-64 (1926); *Morrison v. Olson*, 487 U.S. 654, 689 n.27 (1988). The Supreme Court recognized that important distinction concerning inferior officers in *Seila Law*. *See* 591 U.S. at 218-20 (discussing *Morrison*). In assessing whether a given official is an inferior or principal officer, the central question is "whether he has a superior other than the President." *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (cleaned up). Courts also consider the "nature, scope, and duration of an officer's duties." *Seila Law*, 591 U.S. at 217 n.3 (citing *Edmond v. United States*, 520 U.S. 651, 661 (1997)).

Under that standard, the Special Counsel of the OSC is an inferior officer—and Congress is thus freer to set terms for his removal from office. As explained in our motion, the Special Counsel's role is important but circumscribed. Br. 6-8. The OSC exercises what this Court has aptly described as "limited jurisdiction." *Dellinger*, 2025 WL 471022, at *8. In essence, the Special Counsel is an ombudsman. He cannot regulate or penalize (directly or indirectly) any private conduct. Within the world of federal employment, moreover, he cannot impose any discipline or adverse action on his own authority. Instead, he receives complaints and encourages agencies to seek consensual resolutions; in some cases, he may also petition the MSPB on an injured employee's behalf or petition it to address a prohibited personnel practice or Hatch Act violation, but it is then entirely up to the MSPB how it wishes to act on the petition. *See Am. Fed'n of Gov't Emps., AFL-CIO v. O'Connor*, 747 F.2d 748, 753 (D.C. Cir. 1984) ("[T]he MSPB is free to disagree with the Special Counsel and often does."). The Special Counsel can issue subpoenas while investigating, but he cannot enforce them—only the MSPB can do so. Similarly, although the Special Counsel can issue internal regulations and Hatch Act advisory opinions, they "bind[] neither the public nor any agency or officer of government." *Id.* at 752. The Special Counsel cannot

3

bring an action in federal court. Nor can he conduct his own investigation of reports from employee-whistleblowers within agencies; for such cases, his role is limited to reviewing and assessing any investigations by the relevant agency.

In these ways, the Special Counsel is effectively supervised by and accountable to the MSPB and the other agencies where whistleblowers raise concerns: they must exercise their independent discretion in assessing whether to uphold or pursue his positions. And the Special Counsel's powers do not resemble the authority of the principal officers who lead the CFPB and FHFA. The CFPB Director, for instance, wields the power to "*unilaterally* . . . issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties." *Seila Law*, 591 U.S. at 225. The FHFA Director, in turn, can "hold hearings," "suspend corporate officers," "bring civil actions in federal court," and "impose penalties ranging from $2,000 to $2 million per day." *Collins*, 594 U.S. at 230. The Special Counsel possesses no such executive powers.

Accordingly, the Special Counsel is properly considered an inferior officer under Supreme Court precedent—and the for-cause removal provision is thus lawful.

**b.** Alternatively, Special Counsel Dellinger is likely to prevail on the merits because the OSC is distinguishable from the CFPB and FHFA in ways that powerfully support the continued constitutionality of its removal limitation.

*First*, *Seila Law* and *Collins* were animated by a profound concern about the President's inability to remove officials sitting atop single-headed agencies that exercise core executive power in ways that could "dictate and enforce policy for a vital segment of the economy affecting millions of Americans." *Seila Law*, 591 U.S. at 225; *accord Collins*, 594 U.S. at 255. That concern is not present here because the OSC is an investigative agency with limited advisory and reporting functions focused on HR issues. In performing these functions, the OSC does not regulate or

4

penalize private activity. *See Seila Law*, 591 U.S. at 221 (noting that the OSC "does not bind private parties at all"); Order at 14, No. 25-5028 (D.C. Cir. Feb. 15, 2025) ("*Seila Law* specifically distinguishes the Office of Special Counsel in its analysis."). The OSC also lacks the power to issue binding regulations, oversee adjudications, commence prosecutions, determine what penalties to impose, appear in an Article III tribunal (except as an *amicus*), or control in any way the substantive regulatory framework for any public or private entities. Further, the OSC's authority to promulgate regulations is confined to nonbinding advisory opinions and internal OSC affairs, *see Am. Fed'n*, 747 F.2d at 752 (observing that such regulations "bind[] neither the public nor any agency or officer of government"). And only the MSPB, not the OSC, can issue decisions in administrative adjudications. The OSC's work is essential but it occurs within a "limited jurisdiction" related to federal employers and employees. *Seila Law*, 591 U.S. at 221. It poses no "special threat to individual liberty" for the Special Counsel to receive limited independence from political control in reviewing and investigating confidential whistleblower reports from federal employees. *Id.* at 223.

*Second*, consistent with the reasoning of *Humphrey's Executor*, the OSC exists to vindicate functions and interests held in common by Congress, the Executive Branch, and the public. Congress carefully designed the OSC to play an important reporting role with respect to legislative oversight and deliberations. *See* 5 U.S.C. § 1217. The OSC's work also furthers the distinct and shared inter-branch interest in promoting Executive Branch compliance with congressionally imposed ethical and personnel requirements. In that respect, the OSC is more than just an aspect of the executive power or extension of presidential will. *See Humphrey's Executor*, 295 U.S. at 628. Moreover, the OSC's structure reflects a heavily negotiated inter-branch resolution that was embraced by President Bush when he signed the Whistleblower Protection Act (and by his Attorney General in cooperating to pass the bill). In fact, not one, but two Presidents—Carter and

5

Bush—signed legislation with for-cause removal protections at the OSC, making clear that any interstitial concerns raised by their subordinates at the OLC had either been addressed or overruled in practice by the Office of the President.

*Finally*, the need for independence at the OSC is unique in its character and purposes. With respect to the CFPB and FHFA, the case for agency independence rested heavily on a substantive belief that economic regulation should be free of specific forms of presidential political control. *See Seila Law*, 591 U.S. at 207; *Collins*, 594 U.S. at 229-30. Agency independence in those settings was specifically designed to restrain the President's ability to direct the agencies' regulatory powers consistent with his agenda. Here, in contrast, the OSC lacks any regulatory powers—and the independence afforded by its statutory for-cause removal provisions serves an entirely different function. Rather than hamper the President's substantive regulatory agenda, the OSC's independence protects and assures whistleblowers, including those who may be reluctant to disclose potential wrongdoing to anyone in their own agencies. If the official charged with protecting whistleblowers from retaliation was himself utterly vulnerable to retaliation and removal for taking on politically charged or inconvenient cases, then the OSC's whistleblower protection purpose might fail when it is most needed. Simply put, Congress reasonably found—and two Presidents agreed—that the Special Counsel cannot serve as an independent watchdog, or protect whistleblowers, if he is subject at all times to removal without cause. *See, e.g.*, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *6 n.3, *9 (O.L.C. July 8, 2021) (concluding that *Collins* rendered the Social Security Commissioner removable at-will but did not necessarily apply to the OSC by virtue of its "primarily investigatory function" and "limited jurisdiction").

For these reasons, Special Counsel Dellinger has shown a substantial likelihood of success on the merits of its position that the OSC's for-cause removal protection is unconstitutional.

**c.** The government also briefly argues that Special Counsel Dellinger cannot show entitlement to reinstatement. Opp. 11. This argument is focused solely on the reinstatement of principal officers and is distinguishable on the basis that the Special Counsel is an inferior officer. And it is wrong in any event. Special Counsel Dellinger did not seek in his TRO, and does not request in a preliminary injunction, "reinstatement" to the office of Special Counsel. Rather, he sought a declaration that his termination was unlawful (and therefore void *ab initio*), as well as injunctive relief, and this Court properly issued a TRO providing that he "*shall continue to serve* as the Special Counsel." *Dellinger*, 2025 WL 471022, at *14 (emphasis added). That relief does not run directly to the President but instead to "subordinate executive officials" who may "*de facto*" provide Special Counsel Dellinger with the privileges and authorities of his office. *Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *see also, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 989 (D.C. Cir. 1996) (Silberman, J., concurring). Whatever the general rule as to reinstatement, a preliminary injunction would preserve rather than reinstate the Special Counsel's ongoing tenure in office.

The government's position is also inconsistent with history. For example, courts have also long recognized proceedings in *quo warranto* as "a plain, speedy, and adequate" remedy in law "for trying the title to office." *Delgado v. Chavez*, 140 U.S. 586, 590 (1891); *see also, e.g.*, *Newman v. U.S. ex rel. Frizzell*, 238 U.S. 537, 544 (1915). This procedure vests courts with the traditional remedial authority "not only to oust the respondent [officer] but also to install the relator [officer]." Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* § 496 (1890); *e.g.*, *Boyd v. Nebraska*, 143 U.S. 135, 151 (1892); *U.S. ex rel. Crawford v. Addison*, 73 U.S. 291, 297 (1867) (observing that upon judgment of ouster, "relator thereupon became entitled to the office"). There

7

is no reason that reinstatement is not available to an officer removed by the President in violation of for-cause removal protections. *See* Laurence H. Tribe, *American Constitutional Law* 250 n.20 (2d ed. 1988) (noting that "[i]t seems likely . . . that an injunction could issue to bar unlawful removal" of a government official); *see, e.g.*, *Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) (entering preliminary injunction), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983) (per curiam).

The government's only authority is a handful of prior cases involving removed officers focused on backpay rather than reinstatement. But a litigant's choices about what remedy to seek may reflect practical considerations rather than a legal prohibition. For instance, Myron Wiener originally *did* sue for reinstatement, but the War Claims Commission from which he was removed was abolished by Congress while his suit was pending, and he subsequently refiled to seek only backpay. *See Wiener*, 357 U.S. at 350. As for Messrs. Myers and Humphrey, neither petitioned the Court for reinstatement because both had died over a year before their cases were decided. *See Humphrey's Executor*, 295 U.S. at 612; *Myers*, 272 U.S. at 52 (suit by "administratrix").

Further, in creating for-cause removal protections, Congress fundamentally undertook to safeguard covered officials against removal without cause. It follows from this core statutory design that officials removed without cause can, in the first instance, seek a judicial order (just like the one issued here) providing for their continuance in office. It is appropriate to describe equitable remedies by reference to that statutory scheme. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 444-45 (2011); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946); *Hecht Co. v. Bowles*, 321 U.S. 321, 330-31 (1944). As this Court has explained, "[h]ere we have a statute that incorporates Congress's judgment with respect to the qualifications to be the Special Counsel, as well as the restrictions on removal." *Dellinger*, 2025 WL 471022, at *6 (internal citation omitted).

8

**II.   Special Counsel Dellinger Will Suffer Irreparable Harm Absent Relief.**

Special Counsel Dellinger continues to suffer irreparable injury from the government's conduct, which is depriving him of his statutory entitlement to serve as the lawful agency head of the OSC. As this Court has already observed, that harm results from the President's decision to, "for the first time" in history, "remove[] the Special Counsel from his statutorily prescribed term without any cause or explanation." *Dellinger*, 2025 WL 471022, at *10. The government disagrees, claiming that Special Counsel Dellinger experienced no cognizable injury when he was illegally terminated. Opp. 12-14. According to the government, the President can terminate any agency official with for-cause removal protections, at any time, for any reason—and the fired official cannot seek interim relief or reinstatement. Instead, the government need only provide backpay from the federal fisc after months or years of litigation. This Court has already rejected that argument, and properly so. *See Dellinger*, 2025 WL 471022, at *9-13. Special Counsel Dellinger suffered well-recognized, cognizable harm from the government's unlawful conduct—and is also a proper party to assert the substantial institutional equities of the OSC itself in preserving the independence necessary to its confidential whistleblower protection function.

Those interests, as well as the public interest, counsel in favor of a preliminary injunction preserving the *status quo*. An injunction would mitigate the possibility of continued whiplash at the OSC as courts assess the legality of its for-cause removal protection (and the purported removal of Special Counsel Dellinger). And as this Court concluded, "[t]here are no facts to suggest that an order maintaining Dellinger in the role he occupied for the past year would have a 'disruptive' effect on any administrative process; if anything, it would be his removal that is disruptive." *Dellinger*, 2025 WL 471022, at *10. Given the historic upheaval currently occurring within federal employment and the continued importance of ensuring that whistleblowers are guarded from reprisal, there is need for consistency, not upheaval.

**III.     The Balance of the Equities and Public Interest Favor Special Counsel Dellinger.**

The government briefly states that the balance of equities and public interest favors disrupting the *status quo* and allowing Special Counsel Dellinger to be removed from office while he litigates his claims because of an alleged encroachment into the President's authority. Opp. 14-15. But any asserted democratic and constitutional interests will not be harmed by a preliminary injunction. Instead, it is only "the resolution of the case on the merits, not whether the [order] is stayed pending appeal, that will affect those principles." *Texas v. United States*, 787 F.3d 733, 767-68 (5th Cir. 2015); *see also, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam). The government has not shown any "circumstances that required the President's hasty, unexplained action, or that would justify the immediate ejection of the Senate-confirmed Special Counsel while the legal issue is subject to calm and thorough deliberation." *Dellinger*, 2025 WL 471022, at *13. And given the President's obligations under the Take Care Clause, it is not apparent that the government could show harm from any lawful action by Special Counsel Dellinger to promote compliance with statutory protections for federal employees. Nor does the government reconcile its broad assertions of harm with the limited authorities exercised by the OSC, which include the receipt of complaints by federal employees, investigations of the same (or reviews of investigations by other agencies), reports to Congress and the President, and filing complaints at the MSPB.

## CONCLUSION

Special Counsel Dellinger's motion for a preliminary injunction should be granted.

|  | Respectfully submitted, |
|---|---|
|  | /s/ Joshua A. Matz |
| Kate L. Doniger* | Joshua A. Matz, Bar No. 1045064 |
| HECKER FINK LLP | Jackson Erpenbach, Bar No. 1735493 |
| 350 Fifth Avenue, 63rd Floor | Benjamin Stern* |
| New York, New York 10118 | HECKER FINK LLP |
| (212) 763-0883 | 1050 K Street NW |
| kdoniger@heckerfink.com | Suite 1040 |
|  | Washington, DC 20001 |
|  | (212) 763-0883 |
|  | jmatz@heckerfink.com |
|  | jerpenbach@heckerfink.com |
|  | bstern@heckerfink.com |
|  | *Attorneys for Plaintiff Hampton Dellinger* |
|  | **Admitted pro hac vice* |
| DATED: February 20, 2025 |  |