# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HAMPTON DELLINGER,

<em>Plaintiff,</em>

*v.*

SCOTT BESSENT, *et al.*,

<em>Defendants.</em>

Civil Action No. 1:25-cv-00385-ABJ

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment under Federal Rule of Civil Procedure 56(a).  For the reasons stated below, Defendants' motion should be granted and the Court should enter summary judgment in favor of Defendants.  A proposed order is attached.

Dated: February 21, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Principal Deputy Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

*/s/ Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HAMPTON DELLINGER,

*Plaintiff*,

*v.*

SCOTT BESSENT, *et al.*,

*Defendants.*

Civil Action No. 1:25-cv-00385-ABJ

## <u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................1

BACKGROUND .............................................................................................................................2

I.      Statutory Background ................................................................................................2

II.     The Present Controversy ..........................................................................................4

LEGAL STANDARD ......................................................................................................................6

ARGUMENT ...................................................................................................................................6

I.      The President Can Lawfully Remove the Special Counsel at Will.............................6

        A.     The President Has the Authority to Remove at Will Single Agency Heads,
                Including the Special Counsel.......................................................................7

        B.     This Court Should Not Carve Out an Exception to the President's Removal
                Power for the Special Counsel.......................................................................9

        C.     This Court Misapplied This Precedent in Granting a Temporary Restraining
                Order. ...........................................................................................................11

        D.     Plaintiff's Contrary Arguments Are Meritless. ............................................14

II.     Plaintiff Is Not Entitled to An Injunction................................................................16

        A.     Plaintiff Cannot Show Entitlement to Reinstatement...................................16

        B.     Plaintiff Has Not Suffered an Irreparable Injury..........................................20

        C.     The Balance of the Equities and Public Interest Weigh Strongly in Favor of
                the Government.............................................................................................21

CONCLUSION................................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*,
    64 F.4th 1354 (D.C. Cir. 2023) ........................................................................................16

*Andrade v. Lauer*,
    729 F.2d 1475 (D.C. Cir. 1984) ......................................................................................18

*Baker v. Carr*,
    369 U.S. 186 (1962) ........................................................................................................18

*Barnes v. Kline*,
    759 F.2d 21 (D.C. Cir. 1984) ..........................................................................................20

*Barnhart v. Devine*,
    771 F.2d 1515 (D.C. Cir. 1985) ......................................................................................10

*Berry v. Reagan*,
    No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................19, 20, 21

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ........................................................................................20

*Collins v. Yellen*,
    594 U.S. 220 (2021) ..................................................................................................*passim*

*Constitutionality of the Comm'r of Soc. Security's Tenure Prot.*,
    2021 WL 2981542 (July 8, 2021) ................................................................................9, 13

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ........................................................................................................16

*Edmond v. United States*,
    520 U.S. 651 (1997) ........................................................................................................14

*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018) ...............................................................................21

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ........................................................................................................23

*Frazier v. MSPB*,
    672 F.2d 150 (1982) ........................................................................................................10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ..................................................................................................*passim*

*Freytag v. Comm'r*,
  501 U.S. 868 (1991) ........................................................................................................14

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ........................................................................................................17

*Haddock v. Haddock*,
  201 U.S. 562 (1906) ........................................................................................................12

*Harkrader v. Wadley*,
  172 U.S. 148 (1898) ........................................................................................................18

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ......................................................................................1, 11, 16, 17

*In re Sawyer*,
  124 U.S. 200 (1888) ..................................................................................................17, 18

*INS v. Chadha*,
  462 U.S. 919 (1983) ........................................................................................................13

*Kaufmann v. Kijakazi*,
  32 F.4th 843 (9th Cir. 2022) ..........................................................................................1, 9

*Layser v. USDA*,
  8 M.S.P.B. 72 (1981) ......................................................................................................10

*Mackie v. Bush*,
  809 F. Supp. 144 (D.D.C. 1993), *vacated by Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993)..............20

*Mori v. Dep't of Navy*,
  731 F. Supp. 2d 43 (D.D.C. 2010), *appeal dismissed*, 2010 WL 5371504 (D.C. Cir. Dec. 28, 2010)....6

*Morrison v. Olson*,
  487 U.S. 654 (1988) ........................................................................................ 11, 12, 14, 22

*Myers v. United States*,
  272 U.S. 52 (1926) ...............................................................................................*passim*

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................................16

*Parsons v. United States*,
  167 U.S. 324 (1897) ........................................................................................................16

*Pro-Football, Inc. v. Harjo*,
  284 F. Supp. 2d 96 (D.D.C. 2003) ....................................................................................6

iii

*Raines v. Byrd,*
    521 U.S. 811 (1997) ...................................................................................20

*Rodriguez v. SSA,*
    118 F.4th 1302 (11th Cir. 2024) .............................................................. 1, 9

*Sampson v. Murray,*
    415 U.S. 61 (1974) .....................................................................................20

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) .............................................................................*passim*

*Shurtleff v. United States,*
    189 U.S. 311 (1903) ...................................................................................16

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) .............................................................. 19, 23

*Trump v. United States,*
    603 U.S. 593 (2024) .................................................................7, 10, 15, 22

*United States v. Arthrex,*
    594 U.S. 1 (2021) ..................................................................................3, 14

*United States v. Perkins,*
    116 U.S. 483 (1886) ...................................................................................11

*United States v. Perkins,*
    163 U.S. 625 (1896) ...................................................................................14

*Walton v. House of Representatives of the State of Okla.,*
    265 U.S. 487 (1924) ...................................................................................18

*White v. Berry,*
    171 U.S. 366 (1898) ...........................................................................1, 16, 18

*Wiener v. United States,*
    357 U.S. 349 (1958) ...................................................................................16

**STATUTES**

5 U.S.C. § 1211 ................................................................................................3

5 U.S.C. §§ 1212-1216 ....................................................................................2

5 U.S.C. § 1212 ............................................................................................3, 9

5 U.S.C. § 1213 ................................................................................................3

5 U.S.C. § 1215 ..................................................................................................................9

5 U.S.C. § 1216 ..................................................................................................................9

42 U.S.C. § 902 ..................................................................................................................9

Hatch Act of 1939,
    Pub. L. No. 76-252, 53 Stat. 1147 ..............................................................................2

Civil Service Reform Act of 1978,
    Pub. L. No. 95-454, 92 Stat. 1111 ..............................................................................2

Whistleblower Protection Act of 1989,
    Pub. L. No. 101-12, 103 Stat. 16. ...............................................................................2

Uniformed Services Employment and Reemployment Rights Act of 1994,
    Pub. L. No. 103-353, 108 Stat. 3149 ..........................................................................2

**RULES**

Fed. R. Civ. P. 56 ..............................................................................................................6

**U.S. CONSTITUTION**

U.S. Const. art. II, § 1 .................................................................................................. 7, 23

U.S. Const. art. II, § 2 ..............................................................................................14, 19, 23

U.S. Const. art. II, § 3 ......................................................................................................7

**OTHER AUTHORITIES**

2 Op. O.L.C. 120 (1978) .............................................................................................3, 10, 13

Public Papers of the Presidents, Ronald Reagan, Vol. II, Oct. 26, 1988 (1991)............................ 10, 11

U.S. Dep't of Just., Office of Information Policy, 02.12.25. - 530D Speaker Johnson,
    https://www.justice.gov/oip/ media/1389526 ..................................................................11

U.S. Office of Special Counsel, *About OSC*,
    https://osc.gov/Agency ........................................................................................ 2, 9, 10

U.S. Office of Special Counsel Annual Report for Fiscal Year 2023,
    https://osc.gov/Documents/Resources/Congressional%20Matters/Annual%20Reports
    %20to%20Congress/FY%202023%20Annual%20Report%20to%20Congress.pdf .............. 2, 3, 15

**INTRODUCTION**

In the last five years, the Supreme Court has twice held that restrictions on the President's authority to remove principal officers who serve as the sole heads of executive agencies violate Article II—in those cases, the single heads of the Consumer Financial Protection Bureau and the Federal Housing Finance Agency. *See Seila Law LLC v. CFPB*, 591 U.S. 197 (2020); *Collins v. Yellen*, 594 U.S. 220 (2021). Whatever the agency, for the President to discharge his constitutional duty to supervise those who exercise executive power on his behalf, the President can "remove the head of an agency with a single top officer" at will. *Collins*, 594 U.S. at 256. On that basis, President Biden in 2021 fired the single head of the Social Security Administration without cause. *Rodriguez v. SSA*, 118 F.4th 1302, 1313-14 (11th Cir. 2024) (upholding President's ability to fire head of SSA without cause); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022) (same). And since the Carter Administration, the Executive Branch has repeatedly expressed the view that tenure protections for the head of the Office of Special Counsel violate the Constitution.

Thus, when the President removed Plaintiff Hampton Dellinger as the single head of the Office of Special Counsel (OSC), on February 7, 2025, he engaged in an exercise of his Article II powers. Plaintiff has now filed this lawsuit challenging that removal. But because OSC is an executive branch agency that exercises quintessentially executive functions, the President's actions were consistent with recent Supreme Court precedent. And the extraordinary relief Plaintiff seeks—an injunction forcing the President to retain an agency head whom the President believes should not be entrusted with executive power and preventing him from relying on his preferred replacement—is not available to him. Courts may not issue injunctions against the President. And even when courts do not enjoin the President himself, the Supreme Court has long held that a court "will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." *White v. Berry*, 171 U.S. 366, 377 (1898). Thus, challenges to removals have historically been litigated through suits for back pay, not reinstatement. *E.g.*, *Humphrey's Executor v. United States*, 295 U.S. 602, 618 (1935); *Myers v. United States*, 272 U.S. 52, 106 (1926). An injunction

1

would improperly curtail the President's ability to manage the Executive Branch. For all of these reasons, this Court should enter summary judgment in favor of Defendants.

**BACKGROUND**

### I.    Statutory Background

Congress established the Office of the Special Counsel in the Civil Service Reform Act of 1978. Pub. L. No. 95-454, § 202(a), 92 Stat. 1111, 1122. The Office began as "the investigative and prosecutorial arm of the Merit Systems Protection Board" (MSPB). U.S. Office of Special Counsel Annual Report for Fiscal Year 2023, at 9 (OSC Annual Report).[1] Congress made the Office a freestanding agency in 1989. *See* Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16.

The Office of Special Counsel remains an "investigative and prosecutorial agency." U.S. Office of Special Counsel, *About OSC*, https://osc.gov/Agency (last visited Feb. 21, 2025). The Office executes certain provisions of four federal statutes governing the federal workforce: the Civil Service Reform Act, which regulates the civil-service system; the Whistleblower Protection Act, which forbids reprisals against federal whistleblowers; the Hatch Act of 1939, Pub. L. No. 76-252, 53 Stat. 1147, which restricts political activity by federal employees; and the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), Pub. L. No. 103-353, 108 Stat. 3149, which forbids employment discrimination against service members and veterans. The Office promulgates regulations, receives and investigates allegations of wrongdoing, and brings disciplinary actions. 5 U.S.C. §§ 1212-1216. When a "meritorious case cannot be resolved through negotiation with the agency involved," the Office's Investigation and Prosecution Division "may bring an enforcement action before the MSPB." OSC Annual Report at 11. Similarly, its Hatch Act Unit "seek[s] disciplinary actions before the MSPB," *id.* at 12, and its USERRA Unit "enforces" USERRA, including

---

[1] U.S. Office of Special Counsel, Annual Report to Congress for Fiscal Year 2023 ("OSC Annual Report"), https://osc.gov/Documents/Resources/Congressional%20Matters/Annual%20Reports%20to%20Congress/FY%202023%20Annual%20Report%20to%20Congress.pdf.

2

by "litigating complaints referred from the U.S. Department of Labor," *id.* The Office can even, in certain circumstances, "require an agency head to conduct an investigation and submit a written report." 5 U.S.C. § 1213(a), (c)(2).

In Fiscal Year 2023, the Office of Special Counsel had approximately 129 full-time-equivalent employees and $31.9 million in appropriated funding. OSC Annual Report at 13. The office received 4,611 new cases that year. *Id.* That is "below the average of 5,900 cases received in the five years immediately preceding the [COVID-19] pandemic"; the Office "expects a return to pre-pandemic caseload levels in future fiscal years." *Id.*

The Office of Special Counsel is "headed by the Special Counsel." 5 U.S.C. § 1211(a). The Special Counsel is appointed by the President, with the advice and consent of the Senate, for a term of five years. *See* 5 U.S.C. § 1211(b). The Special Counsel has the statutory authority to appoint subordinate agency personnel, *see* 5 U.S.C. § 1212(d), and the constitutional authority to supervise those officials' exercise of executive power, *see United States v. Arthrex*, 594 U.S. 1, 13 (2021).

The Civil Service Reform Act provides that the Special Counsel "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b). Since 1978, however, the Executive Branch has repeatedly raised constitutional objections to that restriction on the President's removal power. *See Seila Law*, 591 U.S. at 221. For instance, in the Carter Administration, the Department of Justice's Office of Legal Counsel explained that, "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." 2 Op. O.L.C. 120, 121 (1978). President Reagan pocket-vetoed a bill "on constitutional grounds" because the bill would have vested the Office of Special Counsel with additional powers. *Seila Law*, 591 U.S. at 221. And the government filed a brief in the Supreme Court in 2020 explaining that "the President must have the power to remove at will the single hea[d] of the . . . Office of Special Counsel." Gov't Reply & Response Br. at 26, *Collins v. Yellen*, 594 U.S. 220 (No. 19-422) (U.S. Oct., 23, 2020).

## II.    The Present Controversy

Plaintiff was appointed to serve as Special Counsel by President Biden in October 2023 and confirmed by the Senate in February 2024. Compl. ¶ 30. On February 7, 2025, the Director of the White House Presidential Personnel Office informed Plaintiff that the President had removed him from office, effective immediately. *Id.* ¶ 2.

On February 10, 2025, Plaintiff filed this lawsuit. *See generally* Compl. Later that day, he also filed a motion for a temporary restraining order, requesting that he be reinstated as Special Counsel. *See* Pl.'s Mot. for a Temporary Restraining Order ("Pl.'s TRO Mot."), ECF No. 2. Upon receiving the motion, the Court set a near-immediate hearing, before the government had responded to the motion for a temporary restraining order. Several hours later, the Court entered what it described as "a brief administrative stay" that would last until midnight on February 13. Feb. 10, 2025 Minute Order. The Court's order restored Plaintiff to the office of Special Counsel and enjoined Defendants from "deny[ing] him access to the resources or materials of that office or recogniz[ing] the authority of any other person as Special Counsel." *Id.* The next day, the President designated Secretary of Veterans Affairs Doug Collins as Acting Special Counsel, but the Court's order prevented the Executive Branch from giving effect to that designation.

Defendants appealed the administrative stay to the D.C. Circuit, sought a writ of mandamus, and sought a stay of the Court's order. Emergency Mot. for Stay Pending Appeal, *Dellinger v. Bessent*, 25-5025 (D.C. Cir. Feb. 11, 2025). The court of appeals dismissed the appeal for lack of jurisdiction, denied mandamus, and dismissed the motion for a stay. *See* Per Curiam Order, *Dellinger v. Bessent*, 25-5025 (D.C. Cir. Feb. 12, 2025). In a concurring opinion, Judge Katsas indicated that the Court's administrative stay was not immediately appealable, but he emphasized that he "express[ed] no view on the appealability or merits of any later order granting interim relief to [Plaintiff]." *Id.* at 3.

On February 12, 2025, the Court entered a temporary restraining order stating that, "from the date of entry of this order until the Court rules on the entry of a preliminary injunction," Plaintiff "shall continue to serve as the Special Counsel" and that "Defendants may not deny him access to the

resources or materials of that office or recognize the authority of any other person as Special Counsel." Order, ECF No. 14 at 26.  Later that day, Defendants filed a notice of appeal and requested a stay of the temporary restraining order pending appeal, which the Court denied.  ECF Nos. 15, 16, 19.

On February 13, 2025, Defendants filed an emergency motion for a stay pending appeal in the D.C. Circuit.  Mot. to Stay, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 13, 2025).  On February 15, the court dismissed the appeal for lack of jurisdiction and denied Defendants' alternative request for mandamus.  Order, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025).  Judge Katsas dissented. First, he explained that the temporary restraining order was reviewable because it ran afoul of the longstanding rule that courts "may not enjoin the President regarding the performance of his official acts" and "usurp[ed] a core Article II power of the President." *Id.* at 5-7 (Katsas, J., dissenting).  Next, Judge Katsas noted that, under Supreme Court precedent, "Congress cannot constitutionally restrict the President's power to remove the Special Counsel" because the Special Counsel "undoubtedly wields executive power" and because no exception to the President's removal power applies. *Id.* at 9. Finally, he stated that the equities weighed in favor of the government, since backpay remedies are available to Plaintiff, yet the TRO "impinges on the conclusive and preclusive power through which the President controls the executive branch that he is responsible for supervising" and "will likely expose the Office of Special Counsel to uncertainty and litigation." *Id.* at 10-12.

On February 16, 2025, Defendants filed in the Supreme Court an application to vacate the district court's order.  Application to Vacate, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 16, 2025).  On February 21, 2025, the Supreme Court issued an order holding the stay application in abeyance until February 26, 2025, the day the TRO is set to expire.  Order, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025).  Justice Gorsuch, joined by Justice Alito, dissented.  *Id.* at 2 (Gorsuch, J., dissenting).  He wrote that the Court "effectively commanded the President and other Executive Branch officials to recognize and work with someone whom the President sought to remove from office," and such an equitable remedy was not recognized at the founding. *Id.* at 3-4.  And he reaffirmed that "officials" who have "contested their removal" "have generally sought remedies like backpay, not injunctive relief

like reinstatement." *Id.* at 4.  Accordingly, he stated that he would vacate the TRO and remand "with instructions to consider the boundaries of traditional equitable relief." *Id.* at 5 (citation omitted).

On February 15, 2025, this Court issued a minute order consolidating its consideration of Plaintiff's motion for a preliminary injunction with the merits.  *See* February 15, 2025 Minute Order. Pursuant to that order, Defendants now move for summary judgment.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003) (citation omitted).  Rather, the dispute must regard a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation." *Id.* That is determined by "look[ing] to the substantive law on which each claim rests." *Mori v. Dep't of Navy*, 731 F. Supp. 2d 43, 45 (D.D.C. 2010), *appeal dismissed*, 2010 WL 5371504 (D.C. Cir. Dec. 28, 2010).  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party." *Pro-Football*, 284 F. Supp. 2d at 112.

## ARGUMENT

I.    **The President Can Lawfully Remove the Special Counsel at Will.**

OSC is an Executive Branch agency "headed by a single officer," *Seila Law*, 591 U.S. at 221. As described above, from the time OSC was first created in 1978, and across several administrations in the years since, the Executive Branch has expressed doubt as to whether Congress may preclude the President from removing the Special Counsel at will.  Over the past five years, Supreme Court precedent has resolved that question in the negative.  Officials vested with sole responsibility for

overseeing the exercise of executive power must be directly answerable to the President. And the Special Counsel plainly exercises executive power. Therefore, the President must be able to remove him at will.

### A.    The President Has the Authority to Remove at Will Single Agency Heads, Including the Special Counsel.

Time and again, the Supreme Court has held that the President has unrestricted removal authority over principal officers such as Plaintiff. Article II vests the "executive Power" in the President and directs him to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. The executive power "generally includes the ability to remove executive officials." *Seila Law*, 591 U.S. at 213. Otherwise, "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 204 (citation omitted). The President's power to remove those who exercise his executive power on his behalf "follows from the text of Article II," "was settled by the First Congress," and has been "confirmed" by the Supreme Court many times. *Id.*; *Collins*, 594 U.S. at 250-56; *Seila Law*, 591 U.S. at 213-32; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-510 (2010); *Myers v. United States*, 272 U.S. 52, 108-76 (1926). Thus, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts." *Trump v. United States*, 603 U.S. 593, 620 (2024) (citation omitted).

Applying that general rule, the Supreme Court has repeatedly held in recent years that the President must be able to remove at will sole agency heads. *See Seila Law*, 591 U.S. at 220-22. As a general matter, the Constitution "scrupulously avoids concentrating power in the hands of any single individual" save for the President, who is "the most democratic and politically accountable official in Government." *Id.* at 223-24. Single agency heads thus must be accountable to the President through at-will removal. There are only four single agency heads upon whom Congress has sought to confer tenure protection: the Directors of the Consumer Financial Protection Bureau (CFPB) and Federal Housing Finance Agency (FHFA), the Commissioner of Social Security, and the Special Counsel here.

The former three are undisputedly subject to at-will removal under Article II. Supreme Court precedents foreclose any special exception for the Special Counsel.

Start with the Director of the CFPB. In *Seila Law*, the Supreme Court held that Congress had violated Article II by granting tenure protection to that sole agency head. *See* 591 U.S. at 220-32. "The CFPB's single-Director structure contravene[d] [Article II's] carefully calibrated system by vesting significant governmental power in the hands of a single individual accountable to no one." *Id.* at 224. "The Director [wa]s neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is." *Id.* at 224-25. "With no colleagues to persuade, and no boss or electorate looking over her shoulder," the Director could "*unilaterally*" "dictate and enforce policy." *Id.* at 225.

The Supreme Court then extended the at-will-removal rule to the single head of the FHFA. *See Collins*, 594 U.S. at 226-28. The Court found *Seila Law* "all but dispositive," given that the FHFA was "an agency led by a single Director." *Id.* at 250-51. The Court rejected the contention that the FHFA should be treated differently because it exercised less executive power than the CFPB. *See id.* at 251-53. The Court explained that "the nature and breadth of an agency's authority is not dispositive"; that "[t]he President's removal power serves vital purposes even when the officer subject to removal is not the head of one of the largest and most powerful agencies"; and that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authorities of disparate agencies." *Id.* at 251-53. In short, Article II empowers the President "to remove the head of an agency with a single top officer." *Id.* at 256; *see id.* at 273 (Kagan, J., concurring in part and concurring in the judgment) ("Any 'agency led by a single Director,' no matter how much executive power it wields, now becomes subject to the requirement of at-will removal."); *id.* at 292 (Sotomayor, J., concurring in part and dissenting in part) ("After *Seila Law*, the Court reasons, all that matters is that 'the FHFA (like the CFPB) is an agency led by a single Director.'") (cleaned up).

Then came the single head of the Social Security Administration. After *Collins*, President Biden removed the Commissioner of Social Security without cause, contrary to a statute purporting to make

that agency head removable only for "neglect of duty or malfeasance in office."  42 U.S.C. § 902(a)(3).

In supporting that decision, the Office of Legal Counsel explained that "the best reading of *Collins*

and *Seila Law*" "means that the President need not heed the Commissioner's statutory tenure

protection."  *Constitutionality of the Comm'r of Soc. Security's Tenure Prot.*, 2021 WL 2981542, at *1, *7 (July

8, 2021).  The only courts of appeals to have considered the question, the Ninth and Eleventh Circuits,

have both held that statutory restrictions on the removal of that single agency head violate Article II.

*See Rodriguez*, 118 F.4th at 1313-14; *Kaufmann*, 32 F.4th at 848-49.

**B.    This Court Should Not Carve Out an Exception to the President's Removal Power for the Special Counsel.**

Crafting a special exception to at-will removal for the Special Counsel would plainly

contravene those precedents.  "[T]he Special Counsel undoubtedly wields executive power."  Order

at 9, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting).  The Office of

Special Counsel is an "investigative and prosecutorial agency" responsible for executing "four federal

laws": "the Civil Service Reform Act, the Whistleblower Protection Act, the Hatch Act, and the

Uniformed Services Employment & Reemployment Rights Act."  U.S. Office of Special Counsel,

*About OSC*, https://osc.gov/Agency (last visited Feb. 21, 2025).  The Special Counsel may, among

other things, "investigate allegations of prohibited personnel actions," 5 U.S.C. § 1212(a)(2);

"investigat[e]" "any allegation" concerning "political activity," "activities prohibited by any civil ser-

vice law," or "prohibited discrimination," *id.* § 1216(a); and "issue subpoenas" and "order the taking

of depositions," *id.* § 1212(b)(2).  The Special Counsel also enforces multiple statutes by bringing

disciplinary actions and litigating complaints before the MSPB, *see id.* § 1215; intervening in

proceedings before the MSPB, *id.* § 1212(c)(1); and litigating in federal court as an amicus curiae, *id.*

§ 1212(h)(1).  Further, the Special Counsel may appoint other officials in his agency, *see id.* § 1212(d)(1),

and issue regulations, *see id.* § 1212(e).

Those are executive functions—and significant ones at that.  *See* Order at 4, *Dellinger v. Bessent*,

No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (describing Plaintiff as an officer who

"wields significant prosecutorial and investigative power as the sole head of a 129-person office."). At the outset, the Department of Justice recognized that "the Special Counsel's functions are executive in character"; that his powers "are directed at the enforcement of the laws"; and that his "role in investigating and prosecuting prohibited practices is much the same as that of a U.S. Attorney or other Federal prosecutors." 2 Op. O.L.C. 120 (1978). The D.C. Circuit has noted that the Special Counsel is a "prosecutor . . . of merit system abuses" who pursues administrative enforcement actions that are "comparable to criminal prosecutions designed to vindicate the public interest." *Frazier v. MSPB*, 672 F.2d 150, 163 (1982) (emphasis omitted); *see Barnhart v. Devine*, 771 F.2d 1515, 1520 (D.C. Cir. 1985) (describing the Special Counsel as the MSPB's "prosecutorial arm"). The MSPB, too, has described the Special Counsel's relationship to it as like "that of a prosecuting attorney to a court." *Layser v. USDA*, 8 M.S.P.B. 72, 73 (1981). Even the Office of Special Counsel agrees that it is an "investigatory and prosecutorial agency," U.S. Office of Special Counsel, About OSC, https://osc.gov/Agency (last visited Feb. 21, 2025), that is located "within the executive branch," OSC Annual Report at 9. "Investigative and prosecutorial decisionmaking is 'the special province of the Executive Branch,' and the Constitution vests the entirety of the executive power in the President." *Trump*, 603 U.S. at 620 (citation omitted).

Thus, the unconstitutionality of the Special Counsel's tenure protection has long been apparent. The Executive Branch has repeatedly objected to that protection since the enactment of the Civil Service Reform Act in 1978. During the Carter Administration, the Department of Justice explained that, "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." 2 Op. O.L.C. at 121; *see Seila Law*, 591 U.S. at 221 (noting that the statutory tenure provision elicited a "contemporaneous constitutional objection"). In 1988, President Reagan pocket-vetoed a bill that would have vested the Office of Special Counsel with additional powers, explaining that the legislation "raised serious constitutional concerns" by, among other things, "purport[ing] to insulate the Office from presidential supervision and to limit the power of the President to remove his subordinates from office." Public

Papers of the Presidents, Ronald Reagan, Vol. II, Oct. 26, 1988, at 1391-92 (1991); *see Seila Law*, 591 U.S. at 221 (noting that President Reagan vetoed the bill "on constitutional grounds").  And, several years ago, the Acting Solicitor General filed a brief in the Supreme Court explaining that, on the government's reading of Supreme Court precedents, "the President must have the power to remove at will the single heads of the Social Security Administration and Office of Special Counsel."  Gov't Reply & Response Br. at 26, *Collins v. Yellen*, 594 U.S. 220 (No. 19-422).

      **C.**    **This Court Misapplied This Precedent in Granting a Temporary Restraining Order.**

      In its prior order, the Court stated that "the reasoning underlying" *Seila Law* and *Collins* "does not extend to the unique office and official involved in this case" and that OSC "cannot be compared to those involved when the Supreme Court found the removal for cause requirement to be an unconstitutional intrusion on Presidential power."  Order at 9.  But that analysis gets things backwards. *See* Order at 9, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) ("Under [the] rules" set forth by the Supreme Court, "Congress cannot constitutionally restrict the President's power to remove the Special Counsel.").  Supreme Court precedents recognize a "general rule" of "unrestricted removal," subject to only "two exceptions."  *Seila Law*, 591 U.S. at 215.  First, in *Humphrey's Executor*, 295 U.S. 602, the Court concluded that Congress could provide tenure protection to "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Seila Law*, 591 U.S. at 216.[2] Second, the Court has concluded that Congress could provide tenure protection to "certain *inferior* officers with narrowly defined duties."  *Id.* at 204 (citing *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886)).  Those two exceptions represent "the outermost

---

[2] *Humphrey's Executor* appears to have misapprehended the powers of "the New Deal-era [Federal Trade Commission]" and misclassified those powers as primarily legislative and judicial.  *Seila Law*, 591 U.S. at 218.  The exception recognized in *Humphrey's Executor* thus does not apply to multimember agencies that exercise substantial executive power, for instance by promulgating binding rules or issuing final decisions in administrative adjudications.  *See* U.S. Dep't of Just., Office of Information Policy, 02.12.25. - 530D Speaker Johnson, https://www.justice.gov/oip/ media/1389526.

constitutional limits of permissible congressional restrictions on the President's removal power." *Id.* at 218 (citation omitted). These exceptions are inapt. As this Court has recognized, the Special Counsel "is not entirely analogous" to the "FTC panel members" in *Humphrey's Executor* or the "Independent Counsel" in *Morrison.* Order at 12-13. And Supreme Court precedents establish a bright-line rule: "[T]he Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Collins,* 594 U.S. at 256 (citation omitted).

The Court also previously distinguished *Seila Law* and *Collins* on the ground that the Special Counsel exercises "limited jurisdiction," deals with "a small subset" of federal employees, "does not have broad rulemaking authority or wield substantial enforcement authority," and does not "affec[t] a broad swath of the American public or its economy." Order at 15-16. But *Collins* refutes that rationale, making clear that the President's power to remove sole agency heads does not "hing[e] on" "the relative importance of the regulatory and enforcement authority of disparate agencies." 594 U.S. at 253. Article II contains no exception for "limited" exercises of executive power that purportedly affect only "small" groups of people. *Cf. Morrison,* 487 U.S. at 718 (Scalia, J., dissenting) ("The Ambassador to Luxembourg is not anything less than a principal [executive] officer, simply because Luxembourg is small."). And the Special Counsel executes multiple federal laws by investigating allegations of wrongdoing, issuing subpoenas, bringing disciplinary actions, and participating in proceedings before the Merit Systems Protection Board.

The Court later emphasized that, in *Seila Law* and *Collins,* the Supreme Court did "not comment on the constitutionality of any removal restriction" applicable to other agencies that were not before the Court. Order at 14 (quoting *Collins,* 594 U.S. at 256 n.21). "But a court, by announcing that its decision is confined to the facts before it, does not decide in advance that logic will not drive it further when new facts arise." *Haddock v. Haddock,* 201 U.S. 562, 631 (1906) (Holmes, J., dissenting). The results in *Seila Law* and *Collins* may have concerned only the CFPB and FHFA, but just as the Supreme Court in *Collins* found the reasoning of *Seila Law* "all but dispositive" for the FHFA Director, 594 U.S. at 250-51, the reasoning of *Collins* is all but dispositive here. *See id.* at 273 (Kagan, J.,

12

concurring in part and concurring in the judgment) ("Any 'agency led by a single Director,' no matter how much executive power it wields, now becomes subject to the requirement of at-will removal.") (citation omitted); *see id.* at 292 (Sotomayor, J., concurring in part and dissenting in part) ("After *Seila Law*, the Court reasons, all that matters is that 'the FHFA (like the CFPB) is an agency led by a single Director.'") (citation omitted).

The Court also analogized the Special Counsel to the Independent Counsel, whose removal protections were sustained in *Morrison*. Order at 11. But *Morrison* concerned an inferior officer appointed by a court of law, not a principal officer appointed by the President with the advice and consent of the Senate to lead a freestanding executive department. As described more fully below, because the Special Counsel "is not an inferior officer," "[t]he logic of *Morrison* . . . does not apply." *Seila Law*, 591 U.S. at 219.

The Court also noted that Presidents Carter and George H.W. Bush signed the bills that give the Office of Special Counsel its current structure. *See* Order at 13 n.3. But "it is not uncommon for Presidents to approve legislation containing parts which are objectionable on constitutional grounds." *INS v. Chadha*, 462 U.S. 919, 942 n.13 (1983). The Court added that, when concluding that President Biden could fire the Commissioner of Social Security at will, the Office of Legal Counsel "d[id] not address the validity of tenure protections conferred on the Special Counsel." Order at 15 n.4 (quoting *Constitutionality of the Comm'r of Soc. Security's Tenure Prot.*, 2021 WL 2981542, at *6 n.3 (O.L.C. July 8, 2021)). But that 2021 legal opinion simply stated that the Office of Special Counsel would "implicate different considerations," mentioning its "primarily investigatory function and 'limited jurisdiction.'" *Constitutionality of the Comm'r of Soc. Security's Tenure Prot.*, 2021 WL 2981542, at *15 (citation omitted). That opinion did not mention the prosecutorial functions, much less disavow the Office of Legal Counsel's prior determination that, "[b]ecause the Special Counsel [would] be performing largely executive functions, the Congress [could] not restrict the President's power to remove him." 2 Op. O.L.C. at 122. Regardless, one President cannot "bind his successors by diminishing their powers." *Free Enter. Fund*, 561 U.S. at 497.

13

### D.    Plaintiff's Contrary Arguments Are Meritless.

First, Plaintiff argues that he is an inferior officer. ECF No. 21 ("Pl.'s PI Reply") at 3-4. That is plainly wrong. *See* Order at 9, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) ("[T]he Special Counsel is not an inferior officer."). Someone is an inferior officer only if "'he has a superior' other than the President" who has the authority to "direc[t] and supervis[e] him." *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)). The MSPB does not appoint or remove him—only the President can do that. And OSC is a freestanding federal agency that is not contained within or subordinate to any other agency. That means that the Office is a "Department[]" and the Special Counsel is its "Hea[d]." U.S. Const. art. II, § 2, cl. 2; *see Free Enter. Fund*, 561 U.S. at 511. Department heads, by definition, cannot be inferior officers. *See Freytag v. Comm'r*, 501 U.S. 868, 884 (1991); *id.* at 917-18 (Scalia, J., concurring in part and concurring in the judgment).

Regardless, Plaintiff's newfound claim to be an inferior officer does not save his tenure protection. In *Myers*, the Supreme Court held that Article II empowers the President to remove "inferior executive officers" whom he has appointed. 272 U.S. at 161; *see id.* at 158 (upholding the "removal of a postmaster" even though "a postmaster is an inferior officer"). True, the Supreme Court has upheld restrictions on the removal of certain inferior officers appointed by department heads, *see United States v. Perkins*, 163 U.S. 625 (1896), or by courts, *see Morrison v. Olson*, 487 U.S. 654 (1988). But *Myers* holds that if Congress may restrict the removal of inferior executive officers at all, Congress may do so only if it has "vest[ed] the appointment in some one other than the President with the consent of the Senate." 272 U.S. at 162. If an inferior officer is sufficiently important to require the Senate's participation in his appointment, then the President must be able to fire him at will. *See id.* at 161-162. The Special Counsel is a sole agency head appointed by the President with the Senate's consent.

Second, Plaintiff argues that the Special Counsel plays only a "limited" role and that "the Special Counsel's powers do not resemble the authority of the principal officers who lead the CFPB

14

and FHFA." Pl.'s PI Reply at 4-5. But *Collins* could not be clearer that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer"; that the "removal power serves vital purposes even when the officer subject to removal is not the head of one of the largest and most powerful agencies"; and that the scope of the removal power does not "hing[e] on" "an inquiry" into "the relative importance of the regulatory and enforcement authority of disparate agencies." 594 U.S. at 252-253, 256 (citation omitted).

Third, Plaintiff appears to question whether the Special Counsel exercises "executive power" at all and argues that the Office promotes a "shared inter-branch interest." Pl.'s PI Reply at 5-6. But the Office describes itself as an "investigatory and prosecutorial agency," https://osc.gov/Agency, that is located "within the executive branch," *U.S. Office of Special Counsel Annual Report for Fiscal Year 2023*, at 9. "Investigative and prosecutorial decisionmaking is 'the special province of the Executive Branch,' and the Constitution vests the entirety of the executive power in the President." *Trump*, 603 U.S. at 620 (citation omitted). Plaintiff adds that the Special Counsel ensures "compliance with congressionally imposed ethical and personnel requirements." Pl.'s PI Reply at 5. That is a roundabout way of saying that he executes federal laws—the very job of executive officers subject to the President's supervision and control.

Fourth, Plaintiff suggests that the Court should recognize a new exception to the President's removal power given the Office of Special Counsel's "unique" status and alleged "need for independence." Pl.'s PI Reply at 6. But nothing about OSC justifies recognizing a new exception to the "general rule" of "unrestricted removal," *Seila Law*, 591 U.S. at 215. The Supreme Court has held the opposite many times, has cabined the "two exceptions to the President's unrestricted removal power" as representing "the outermost constitutional limits of permissible congressional restrictions" on removal, and has warned against extending those exceptions to "novel context[s]." *Id.* at 204, 218 (citation omitted).

For all of these reasons, the President's removal of Plaintiff was lawful.

II.    **Plaintiff Is Not Entitled to An Injunction.**

To establish his entitlement to a permanent injunction, Plaintiff must demonstrate: "'(1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "When the defendant is the government, factors (3) and (4) merge." *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Plaintiff has not established any of these factors.

A.    **Plaintiff Cannot Show Entitlement to Reinstatement.**

This Court lacks the power to issue any order reinstating a principal executive officer removed by the President. *See* Order at 3, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (explaining that courts can only issue equitable remedies that existed at the founding and that "courts of equity at the time of the founding were apparently powerless to 'restrain an executive officer from making a . . . removal of a subordinate appointee.'") (quoting *White*, 171 U. S. at 377).) When executive officers have challenged their removal by the President, they have "generally sought remedies like backpay, not injunctive relief like reinstatement." Order at 4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting); *see Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees")[3]; *see also* Order at 7, *Dellinger v. Bessent*, No.

---

[3] Plaintiff argues that the plaintiffs in *Myers* and *Humphrey's Executor* had died. Pl.'s PI Reply at 8. But Myers and Humphrey were, of course, alive at the time of their removals, yet neither sought an injunction restoring him to office. Each waited, let back-pay claims accumulate, and eventually asserted those claims in court, directly or through an executor. Myers was removed in February 1920, sued for back pay in April 1921, and was later succeeded as a plaintiff by the administrator of his estate. *Myers*, 272 U.S. at 106, 108. And Humphrey's executor sought salary due to Humphrey "from

25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) ("[C]ourts may not enjoin the President regarding the performance of his official acts, regarding removal or otherwise . . . That is why removed executive officers traditionally have sought judicial review not through injunctive actions against the President for reinstatement, but through backpay actions for damages."). That rule reflects the obvious Article II problems that arise if a court attempts to reinstate a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power.

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove. As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful." *Myers*, 272 U.S. at 124 (citation omitted). Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence." *Id.* at 131-32 (citation omitted). And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties? Shall he be continued, I ask again, against the will of the President?" *Id.* at 132 (citation omitted). The injunction Plaintiff seeks raises just this problem.

An injunction would also exceed the scope of this Court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, "[t]he

---

October 8, 1933, when the President undertook to remove him from office, to the time of his death on February 14, 1934." *Humphrey's Executor*, 295 U.S. at 612.

jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay. *Id.* Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a *federal* officer" reflect "a traditional limit upon equity jurisdiction" (emphasis added)); *Walton v. House of Representatives of the State of Okla.*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White*, 171 U.S. at 377 ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."). Plaintiff argues that courts could reinstate wrongly removed public officers by issuing a writ of quo warranto (which is a legal rather than an equitable remedy), *see* Pl.'s PI Reply 7, but Plaintiff has not sought quo warranto or attempted to satisfy the distinct procedural and substantive prerequisites for that relief, *see Andrade v. Lauer*, 729 F.2d 1475, 1497-98 (D.C. Cir. 1984). *See also* Order at 4-5, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (casting doubt on Plaintiff's ability to seek a writ of quo warranto because it is "a distinct *legal* remedy he never sought, the district court never invoked, and the procedures for which he did not follow.").

"Perhaps the most telling indication of the severe constitutional problem with the [remedy] is the lack of historical precedent for [it]." *Free Enterprise Fund*, 561 U.S. at 505 (citation omitted). Defendants are unaware of any previous case in which a court ordered the reinstatement of single agency head after removal by the President. At most, a court in this District in 1983 effectively reinstated removed members of the multimember U.S. Commission on Civil Rights because that court believed that the commission functioned as a "legislative agency" whose "'only purpose'" was "to find facts which [could] subsequently be used as a basis for legislative or executive action"—not to exercise

18

any executive power in its own right. *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *2 (D.D.C. Nov. 14, 1983) (citations omitted); *see also* Order at 4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (distinguishing the U.S. Commission on Civil Rights from OSC); Order at 8, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (describing *Berry* as "a far cry from this case"). That is no support for Plaintiff's insistence that an agency head whom the President has fired must keep exercising Article II powers.

Plaintiff contends that the longstanding rule preventing a court from enjoining the President does not apply because he seeks an injunction against "subordinate executive officials" who may "*de facto*" provide Special Counsel Dellinger with the privileges and authorities of his office. Pl.'s PI Reply at 7. But the President is the "only official with the statutory and constitutional authority to appoint, remove, and supervise" agency heads. Order at 6 n.2, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir) (Katsas, J., dissenting); *see also* U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone). Therefore, the relief Plaintiff requests here—an order that he "may not be removed from his office as Special Counsel" and that Defendants "may not place an Acting Special Counsel in [his] position, or otherwise recognize any other person as Special Counsel or as the agency head of the Office of Special Counsel, Compl., Prayer for Relief, ¶¶ d.-e.—would prevent the President from exercising his lawful Article II authority to select an officer of his choosing. Whether the order is expressly directed at the President or not, Supreme Court precedents reinforce that courts lack power to issue any order reinstating a principal executive officer removed by the President.[4]

---

[4] *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), does not compel a contrary result. In *Swan*, the D.C. Circuit held only that the plaintiff, a former member of the National Credit Union Administration who had been removed by President Clinton, had *standing* to challenge his removal because his injury could be redressed by the actions of subordinate officials. *Id.* at 978-81; *see also id.* at 980 ("[W]e hold that the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability, even recognizing that the President has the power, if he so chose, to undercut this relief."). Standing is not at issue in this case, and *Swan* expressly declined to decide whether courts have the authority to order reinstatement as a remedy, noting that it was not "determining whether we can order more complete relief[.]" *Id.* at 980-81. For the reasons stated, a court cannot do so.

**B.      Plaintiff Has Not Suffered an Irreparable Injury.**

Plaintiff's claimed injury is his "statutory entitlement to serve as the lawful agency head of the OSC." Pl.'s TRO Mot. at 15. That claim does not meet the "high standard for irreparable injury," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)—a standard that is particularly rigorous in cases involving the government, given that the "[g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Sampson v. Murray*, 415 U.S. 61, 83 (1974) (quotation marks omitted).

Although Plaintiff's removal deprives him of his employment and salary, such consequences ordinarily do not amount to irreparable injury, "however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820 (1997). The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting). At bottom, Plaintiff's claim to irreparable injury from being unable to continue to wield executive power is precisely the problem. Executive power belongs to the President, not to Plaintiff, and wresting control of that power from the President is constitutionally intolerable.

*Berry v. Reagan*, the sole case Plaintiff relies on to show irreparable injury, is thus inapposite.[5] *Berry* described the removal of the officers at issue there as evidently irreparable for reasons that do not apply here. There, President Reagan removed several members of the Commission on Civil Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. 1983 WL 538, at *1, *5 (D.D.C. Nov. 14, 1983). This "obviously disruptive effect" on the functioning of the Commission was irreparable because it would prevent the Commission from *ever* completing its statutory mandate, given that the

---

[5] This Court held that the other case cited by Plaintiff, *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C. 1993), *vacated by Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993), is "not comparable" to this one. Order at 21.

Commission was set to expire. *Id.* at *5. Plaintiff and the OSC are differently situated; the OSC will not cease to exist and can function without Plaintiff. *See* Order at 11-12, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (explaining that *Berry* does not apply to this case because "[t]here is no reason to think that routine succession would tend to destabilize OSC"); *English v. Trump*, 279 F. Supp. 3d 307, 334-35 (D.D.C. 2018) (distinguishing *Berry* from case in which plaintiff sought to be installed as Acting Director of CFPB).

To the extent the harm Plaintiff asserts is harm to the OSC, that assertion is misplaced. The contention that denying him relief would deprive the OSC of the inability to fulfill its mandate is both incorrect and merely a repackaging of Plaintiff's contention that he is the best person for the position and that the President had no sound reason for removing him—*i.e.*, that an OSC with Plaintiff as a member would better serve the agency's mission than one without him. That is the President's prerogative to determine.

### C.    The Balance of the Equities and Public Interest Weigh Strongly in Favor of the Government.

The balance of the equities and public interest weigh strongly against Plaintiff's reinstatement as Special Counsel. Because the Special Counsel exercises executive authority, reinstalling as its head a person the President does not wish to entrust with the exercise of Executive power would work a great and irreparable harm to the Executive. Such a remedy would undermine the accountability of the Executive Branch instilled by the Constitution. The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President." *Seila Law*, 591 U.S. at 224. Adding additional exceptions to that constitutional rule—and then, under those exceptions, reinstating principal officers whom the President has removed from office—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499.

This Court previously stated that Defendants failed to identify "circumstances that required the President's hasty, unexplained action, or that would justify the immediate ejection of the Senate-

confirmed Special Counsel," Order at 25, but that reasoning is incompatible with the notion of removal *at will*. A President may remove executive officers for many reasons: to remove "those he finds 'negligent and inefficient,'" "those who exercise their discretion in a way that is not 'intelligent or wise,'" "those who have 'different views of policy,'" "those who come from a competing political party,'" and "those in whom he has . . . lost confidence." *Collins*, 594 U.S. at 256 (brackets and citation omitted). Presidents may remove executive officers simply because they want to appoint someone else. "[T]he President's power to remove 'executive officers of the United States' may not be regulated by Congress *or reviewed by the courts*." *Trump*, 603 U.S. at 621 (emphasis added; citation omitted).

The Court also previously remarked that the Executive Branch did not face significant harm because OSC has a "narrow focus," Order at 25, but any encroachment on the President's ability to exercise his executive power causes him significant harm. Fundamentally, "[i]t is not for [this Court] to determine, and [the Court has] never presumed to determine, how much of the purely executive powers of government must be within the full control of the President. The Constitution prescribes that they *all* are." *Morrison*, 487 U.S. at 709 (Scalia, J., dissenting). And in any event, the Court understates the extent of the Special Counsel's powers. As noted, the Special Counsel may appoint personnel, promulgate regulations, launch investigations, issue subpoenas, bring disciplinary actions, and represent the Executive in proceedings in court and before the Merit Systems Protection Board.

Conversely, the public interest would not be served by reinstating Plaintiff. As discussed above, OSC's ability to resume its functions could be accomplished by other means—namely, the appointment of a different individual as Special Counsel. And the public would be better served by the appointment of a principal officer who holds the President's confidence and can effectively serve him in executing his duties as Chief Executive than by Plaintiff's instatement.

Moreover, reinstating Plaintiff would not provide any clarity. To the contrary, a court order permanently reinstating Plaintiff would cause further confusion. As described, it is not at all clear that any Defendant besides the President has the authority to reinstate Plaintiff to his vacated seat, *see* U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone), or that this

Court could direct the President to do so, *see Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) ("A question exists, however, as to whether a federal court has the power to grant injunctive relief against the President of the United States in the exercise of his official duties."); *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992).  Furthermore, because Defendants are likely to succeed in affirming the constitutionality of Plaintiff's removal on further review, any actions the OSC takes while headed by an officer who has been reinstated by this Court after his removal by the President would be called into question and potentially voidable.  *See Collins*, 594 U.S. at 259 (private parties may be entitled to a remedy when an unconstitutional removal restriction "inflict[s] compensable harm," such as if "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision").  Thus, Plaintiff's claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care the Laws be faithfully executed."  U.S. Const. art. II, § 1, cl. 1.

## CONCLUSION

For the reasons above, the Court should grant summary judgment in favor of Defendants.

Dated: February 21, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Principal Deputy Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

*/s/ Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*

23