IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, *Plaintiff*, v. SCOTT BESSENT, *et al.*, *Defendants*. | Civil Action No. 1:25-cv-00385-ABJ |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). The executive power encompasses the authority to remove those who aid the President in carrying out his duties. These principles have led the Supreme Court and courts of appeals to affirm that the President can remove at will the heads of all other executive branch agencies with a single leader. *Seila Law*, 591 U.S. at 205 (CFPB); *Collins v. Yellen*, 594 U.S. at 228 (2021) (FHFA); *Rodriguez v. SSA*, 118 F.4th 1302, 1313-14 (11th Cir. 2024) (SSA); *Kaufmann v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022) (SSA). As Defendants explained in their motion for summary judgment, like those other single-head agencies, the President may lawfully remove the sole head of the Office of Special Counsel (OSC) at will. *See* Defs.' Mot. for Summ. J. ("Def.'s Mot.") at 6-15, ECF 22.

In his cross-motion for summary judgment, *see* Pl.'s Cross-Mot. for Summ. J. & Opp'n to Gov't Mot. for Summ. J. (Pl.'s Mot.), ECF No. 23, Plaintiff now contends that the Special Counsel falls within a narrow exception to the President's removal power for inferior officers, or officers who are "directed and supervised at some level by others who were appointed by Presidential nomination

1

with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 662 (1997). But as the head of the Office of Special Counsel, a freestanding executive branch agency exercising core executive power, the Special Counsel is directed and supervised by nobody other than the President. He is definitionally a principal officer.

As to remedy, Plaintiff also advances several arguments to try to circumvent the longstanding principle that courts cannot enjoin the President. But Plaintiff cannot escape the nature of his requested remedy: Any injunction that restrains the President's ability to appoint his preferred head of OSC and his ability to remove an officer in whom he lacks confidence is an equitable remedy that runs against the President. Moreover, Plaintiff's other arguments run headlong into Supreme Court precedent holding that a federal court's inherent equitable authority is limited to those equitable powers traditionally available at the Founding. Reinstatement of a principal officer was not among these remedies. Nor does Plaintiff meaningfully contend otherwise.

Because Plaintiff has failed to demonstrate he is entitled to relief, the Court should grant summary judgment in favor of Defendants and deny Plaintiff's cross-motion for summary judgment.

## ARGUMENT

### I. The President Lawfully Removed Plaintiff as Head of the Office of Special Counsel.

#### A. Plaintiff Is Not An Inferior Officer.

Seemingly recognizing the weakness of his claim that the President's at-will removal authority over single agency heads cannot be lawfully constrained, Plaintiff changes tack and primarily relies on an argument he did not even raise in his motion for a preliminary injunction: that he is an inferior rather than principal officer. As Defendants explained in their motion for summary judgment, *see* Def.'s Mot. at 14, that is clearly incorrect.

"Whether one is an 'inferior' officer depends on whether he has a superior." *Edmond*, 520 U.S. at 662. The Supreme Court has held that "'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id.* at 663; *accord United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021). Plaintiff is not "directed and supervised" by anyone other than the President. He is appointed by the President

alone, and he can be removed by the President alone. 5 U.S.C. § 1211(b). He is not subordinate to any other officer. *See Morrison v. Olson*, 487 U.S. 654, 719 (1988) (Scalia, J., dissenting) ("At the only other point in the Constitution at which the word 'inferior' appears, it plainly connotes a relationship of subordination."); *see also id.* at 721 ("Nor are any of the other cases cited by the Court in support of its view inconsistent with the natural reading that an inferior officer must at least be subordinate to another officer of the United States.").

Plaintiff is also the head of a distinct agency—a position that cannot be anything other than a principal officer. As Plaintiff himself puts it, the Office of Special Counsel is "an independent federal agency." Pl.'s Mot. at 1. The Office began as part of the MSPB, but in 1989, Congress chose to make the Office a freestanding agency. *See* Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16. OSC is a "free-standing, self-contained entity in the Executive Branch" that is "not subordinate to or contained within any other such component," *Free Enter. Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 511 (2010). The statute establishes that the "Office of Special Counsel . . . shall be headed by the Special Counsel." 5 U.S.C. § 1211(a). That means OSC is an Executive Department, and as the head of a Department, Plaintiff is a principal officer. *See* U.S. Const. Art. II § 2, cl. 2 (vesting the power to appoint inferior Officers in "the Heads of Departments").

Further, as the Head of a Department, the Special Counsel is authorized to appoint other inferior officers. *Id.*; 5 U.S.C. § 1212(d)(1) (authorizing the Special Counsel to make appointments). Indeed, Congress' choice to make the Special Counsel the Head of a Department represents a "sharp distinction between" his status as a "principal officer[] and [other] inferior officers." *Freytag v. Commissioner*, 501 U.S. 868, 919 (1991) (Scalia, J., concurring in part and concurring in the judgment); *accord Free Enter. Fund*, 561 U.S. at 510-13 (endorsing the *Freytag* concurrence). And in its brief in *Seila Law*, the House of Representatives assumed that the Special Counsel was a principal officer in comparing him to the CFPB Director, who no party disputed was a principal officer. *See* Brief for Amicus Curiae the U.S. House of Representatives at 25-26, *Seila Law LLC v. CFPB*, 2020 WL 487328 (U.S., Jan. 22, 2020) ("[P]etitioner and the Solicitor General assert that the combination of a for-cause removal protection with a single-director structure is suspect because it is "novel." Petr. Br. 22-24;

SG Br. 32-35. But that combination has existed for decades. Congress gave the head of the Office of Special Counsel for-cause removal protection more than forty years ago. Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 202(a), 92 Stat. 1122. The Social Security Administration and the Federal Housing Finance Agency also combine these characteristics. ACUS Sourcebook 48-49.").

Plaintiff does not identify a single case holding that the sole head of an agency is an inferior officer. Instead, he primarily contends that because the Special Counsel has "circumscribed" authority, he cannot be a principal officer. Pl.'s Mot. at 11-12. But that inquiry is relevant only to whether Plaintiff is an officer at all, not whether he is an *inferior* officer. *See Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018) (one element of test for distinguishing between "officers and employees" is whether the official exercises "significant authority"). What matters for present purposes is whether the officer is supervised by someone other than the President, and he is not.[1] In any event, even Plaintiff's premise is wrong. As Justice Gorsuch explained, the Special Counsel "wields significant prosecutorial and investigative power as the sole head of a 129-person office." Order at 4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting); *see also Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *11 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (the Special Counsel exercises "broad investigative and enforcement powers."); Def.'s Mot. at 9-10.

Plaintiff also argues that the Special Counsel is "effectively" supervised by the MSPB. Pl.'s Mot. at 13. But that makes no sense: The Special Counsel is not "supervised" by the MSPB any more than the Solicitor General is "supervised" by the Supreme Court. Plaintiff provides no statutory provision indicating that the Special Counsel reports to, or is any way directed by, the MSPB. This is unsurprising, since the Special Counsel "perform[s] his vested responsibilities without any direction from the Board." *Presidential Appointees-Removal Power-Civ. Serv. Reform Act-Const. L. (Article II, S 2, Cl. 2)*, 2 U.S. Op. Off. Legal Counsel 120, 121 (1978). As OLC explained, "[t]he Special Counsel has a

---

[1] For this reason, Plaintiff's cases—none of which involves the head of an agency—are inapposite. *See Vanda Pharms. Inc. v. Food & Drug Admin.*, No. 23 Civ. 2812, 2024 WL 4133623, at *18 (D.D.C. Sept. 10, 2024) (discussing authority of subordinate official in the U.S. Department of Health and Human Services, who was appointed by the Secretary); *Villarreal-Dancy v. U.S. Dep't of the Air Force*, No. 19 Civ. 2985, 2021 WL 3144942, at *8-*9 (D.D.C. July 26, 2021) (explaining that the Air Force Board for Correction of Military Records is subordinate to the Air Force Secretary).

4

status independent of and apart from the Board." *Memorandum Opinion for the General Counsel, Civil Service Commission*, 2 Op. O.L.C. 120, 121 (1978). Indeed, the relationship Plaintiff describes between the Special Counsel and MSPB is nothing more than "the same relation . . . as Federal prosecutors bear to the Federal courts." *Id.* at 122. The powers that Plaintiff references in support of his contention that the MSPB supervises the Special Counsel are just like those of prosecutors: prosecutors cannot "impose any discipline . . . on [their] own authority," Pl.'s Mot. at 11, prosecutors cannot "actually enforce [subpoenas]" without going to a court, *id.*, and a court is "free to disagree with [prosecutors]," *id.* (citing *Am. Fed'n of Gov't Emps., AFL-CIO v. O'Connor*, 747 F.2d 748, 753 (D.C. Cir. 1984)).[2] It is certainly not the case that a prosecutor is "directed and supervised" by a court. *See Edmond*, 520 U.S. at 662.

Plaintiff argues, without citation, that he is an inferior officer because he cannot "conduct his own investigation of reports from employee-whistleblowers within agencies." Pl.'s Mot. at 12. But the Special Counsel does not need approval from an agency head before initiating an investigation. Rather, the Special Counsel is authorized to "investigate [an] allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken." 5 U.S.C. § 1214(a)(1)(A). And even "in the absence of an allegation," the Special Counsel has the power to "conduct an investigation for the purpose of determining whether there are reasonable grounds to believe that a prohibited personnel practice (or a pattern of prohibited personnel practices) has occurred, exists, or is to be taken." *Id.* § 1214(a)(5). Plaintiff also misleadingly suggests that other federal agencies must "exercise their independent discretion in assessing whether to pursue the Special Counsel's recommendations" and that "any recommendation he makes . . . is subject to" their discretion. Pl.'s Mot. at 13. To the contrary, the Special Counsel has express authority to initiate an enforcement action before the MSPB if an agency does not take action in response to the Special Counsel's recommendations. 5 U.S.C. § 1214(a)(2)(C).

---

[2] *Am. Fed'n of Gov't Emps., AFL-CIO v. O'Connor*, which Plaintiff relies on several times for his assertion that the Special Counsel exercises only limited authority, involved a non-binding advisory opinion issued by a subordinate to the Special Counsel, 747 F.2d at 751-53, not any of the Special Counsel's other, sweeping investigatory and prosecutorial powers.

Finally, Plaintiff misreads *Myers v. United States*, 272 U.S. 52 (1926). *See* Pl.'s Mot. at 13-14. Plaintiff's cited portion of *Myers* merely recited the proposition from *Shurtleff v. United States* that as a matter of statutory interpretation, Congress must speak with "very clear and explicit language" to restrict the President's removal power. 189 U.S. 311, 315 (47 L. Ed. 828). *Myers* held that the President can remove inferior officers whom he appointed. 272 U.S. at 161-62; *see id.* at 162 ("If [Congress] does not choose to intrust the appointment of such inferior officers to less authority than the President with the consent of the Senate, it has no power of providing for their removal."). And the Court in *Seila Law* limited the exception to the President's "unrestricted removal power" for inferior officers to only those "with limited duties and no policymaking or administrative authority." 591 U.S. at 204, 218. As the head of OSC, the Special Counsel has broad investigative power and administrative authority.³ In sum, whether an inferior or principal officer, the Special Counsel is removable at will.

### B. Plaintiff's Remaining Arguments Lack Merit.

Plaintiff otherwise essentially reiterates the arguments he previously made in his reply brief in support of his motion for a preliminary injunction. *See* Pl.'s Reply in Supp. of his Mot. for Prelim. Inj. at 4-6, ECF No. 21. Defendants have already responded to each of those arguments in their motion for summary judgment. Defs.' Mot. at 14-15. Accordingly, Defendants rest on their prior arguments.

## II. Plaintiff Is Not Entitled to An Injunction.

### A. Plaintiff Cannot Show Entitlement to Reinstatement.

The Supreme Court recognized long ago that a court "has no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 4 Wall. 475, 501 (1867). Awarding an injunction that would reinstate Plaintiff to the office from which the President has removed him inevitably restrains the President from exercising two core Article II powers: it prevents him from removing an officer that only he has the power to remove and it prevents him from appointing an officer that only he has the power to appoint. Such an injunction would be an affront

---

³ Indeed, Plaintiff continues to exercise this executive authority even after the Court granted his TRO request and reinstated him as Special Counsel. *See U.S. Office of Special Counsel v. Office of Personnel Management*, (Feb. 21, 2025), *available at* https://osc.gov/Documents/PPP/Formal%20Stays/Stay%20Request%20(VA)%20Redacted.pdf.

6

to the separation of powers. Moreover, courts only have the authority to issue equitable relief recognized at the Founding, and courts did not recognize the reinstatement of a principal officer as a permissible equitable remedy. Accordingly, officers challenging their removal have "generally sought remedies like backpay, not injunctive relief like reinstatement." Order at 4, *Dellinger*, No. 24A790 (Gorsuch, J., dissenting); *see also* Def.'s Mot. at 16-17. Resisting these well-established conclusions, Plaintiff advances several arguments to try to avoid the constitutional bar on enjoining presidential powers that sit at the heart of his authority under Article II. None has merit.

*First*, the two cases Plaintiff cites for the proposition that a district court "has authority to grant declaratory and injunctive relief in this context" do not hold this. *See* Pl.'s Mot. at 18 (citing *Severino v. Biden*, 71 F.4th 1038, 1042-43 (D.C. Cir. 2023); *Swan v. Clinton*, 100 F.3d 973, 979-80 (D.C. Cir. 1996)). To the contrary, "[a]n injunction preventing the President from firing an agency head— and thus controlling how he performs his official duties—is virtually unheard of." *Dellinger*, 2025 WL 559669, at *14 (Katsas, J., dissenting); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part and concurring in the judgment) ("I am aware of only one instance in which we were specifically asked to issue an injunction requiring the President to take specified executive acts [and] we emphatically disclaimed the authority to do so"). Neither *Swan* nor *Severino* ordered the reinstatement of a principal officer. If anything, *Severino* and *Swan* only confirm the extent of the President's removal power under Article II: both cases upheld the President's power to remove officers at will. *See Severino*, 71 F.4th at 1043 (member of the Administrative Conference of the United States); *Swan*, 100 F.3d at 983-88 (member of the Board of the National Credit Union Administration).

Plaintiff presumably cites *Swan* and *Severino* to support his argument that the court can enjoin "subordinate executive officials" in order to avoid the constitutional bar on enjoining the President, Pl.'s Mot. at 18-19, but this argument likewise fails. Both cases held only that, for purposes of showing Article III standing, the plaintiff would satisfy the redressability prong if he sought "partial relief" from subordinate officials. *See Swan*, 100 F.3d at 980-81. In *Severino*, the court explained that "enjoining the President to make a formal appointment would be a constitutionally exceptional step," but observed that it "need not confront that difficult question because [its] jurisdiction does not

7

depend on deciding whether an injunction ordering a presidential appointment would be available or appropriate." 71 F.4th at 1042. The court explained that the "redressability prong of standing requires only that we be able to offer [the plaintiff] 'at least some of the relief' he seeks, and it is "*sufficient for Article III standing* if we can enjoin 'subordinate executive officials.'" *Id.* at 1042-43 (emphasis added). Likewise, in *Swan*, the court explained that "the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability even recognizing that the President has the power, if he so chose, to undercut this relief." 100 F.3d at 980-81. The court emphasized that it was "simply recognizing that such partial relief is sufficient for standing purposes," and expressly declined to decide the question of "whether we can order more complete relief." *Id.* at 981. As these courts aptly recognized, the question of whether Plaintiff has standing to bring his removal claims is separate and distinct from the question of whether a court can issue an injunction reinstating a principal officer to his former post. A court cannot do so. *See* Def.'s Mot. at 16-19.

*Second*, Plaintiff argues that the merger of law and equity somehow undermines the proposition that the Court has no authority to issue equitable remedies not recognized at the Founding. *See* Pl.'s Mot. at 23. But that is beside the point. As explained, *see* Def.'s Mot. at 17-18, the Supreme Court recently held that federal courts derive their equitable powers from the Judiciary Act of 1789, ch. 20, 1 Stat. 73. *See Grupo Mexicano de Desarrollo S.A.* v. *Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). They must exercise those powers in accordance with "traditional principles of equity jurisdiction," as understood at the Founding. *Id.* at 319 (citation omitted). Federal courts may award only those equitable remedies that were "traditionally accorded by courts of equity"; courts lack "the power to create remedies previously unknown to equity jurisprudence." *Id.* at 319, 332. And one of the most well-established principles of equity jurisprudence is that a court may not enjoin the removal of an executive officer. For instance, in *White v. Berry*, 171 U.S. 366 (1898), the Supreme Court reversed an injunction preventing the removal of a federal revenue officer who had been appointed by the Secretary of the Treasury. The Court explained that "a court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." *Id.* at 377 (citation omitted). Similarly, in *In re Sawyer*, 124 U.S. 200 (1888),

8

the Court held that a federal court lacked the power to enjoin the removal of a municipal officer. It is "well settled," the Court explained, "that a court of equity has no jurisdiction over the appointment and removal of public officers." *Id.* at 212. The Court has reaffirmed those principles in several other cases. *See Baker v. Carr*, 369 U.S. 186, 231 (1962); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898).

That principle is longstanding, well established, and dispositive. "No English case has been found of a bill for an injunction restrain [an] appointment or removal." *Sawyer*, 124 U.S. at 212. State courts have "denied" the "power of a court of equity to restrain . . . removal" in "many well considered cases." *Id.* And one 19th-century scholar wrote that "[n]o principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment of public officers or their title to office." 2 James L. High, *Treatise on the Law of Injunctions* § 1312 (2d ed. 1880).

Plaintiff also argues that the equitable remedy he seeks is not reinstatement, but what he describes as "a continuance remedy." Pl.'s Mot. at 20. Plaintiff fails to explain how a "continuance remedy" is one that, "at the time of the Nation's founding," was "traditionally accorded by courts of equity." Order at 4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (citing *Grupo Mexicano*, 527 U.S. at 3189)). Whatever a "continuance remedy" even means, the practical effects of such a remedy would be no different than ordering Plaintiff reinstated to his former position. Because the President did remove from office, any injunction would necessarily require reinstatement to that office. Indeed, none of the cases cited by Plaintiff involving reinstatement of government employees, *see* Pl.'s Mot. at 23, presents the same issue as the one here: reinstatement of a Presidentially-appointed, Senate-confirmed head of an agency.

*Third*, Plaintiff argues that the Court can award declaratory relief against the President, Pl.'s Mot. at 19-20, but the same principles that foreclose reinstatement likewise foreclose declaratory relief. A court "cannot issue a declaratory judgment against the President." *Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment). And a declaratory-judgment suit is "essentially

9

an equitable cause of action." *Samuels* v. *Mackell*, 401 U.S. 66, 70 (1971) (citation omitted). "[T]he Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting 'further necessary or proper relief,' 28 U.S.C. § 2202, and therefore a declaratory judgment . . . might serve as the basis for a subsequent injunction." *Id.* at 72. "[E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.* As a result, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Id.* at 73. To be sure, there may be "unusual circumstances" where "a declaratory judgment might be appropriate" even though "an injunction [would] be withheld." *Id.* But "ordinarily," "where an injunction would be impermissible," "declaratory relief should . . . be denied as well." *Id.* at 73; *see Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

*Fourth*, Plaintiff argues that he can be reinstated to his former position through a writ of mandamus or by proceeding in quo warranto. Pl.'s Mot. at 21-22. Plaintiff has satisfied the requirements for neither mandamus or quo warranto. The writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 606 (D.C. Cir. 2002). Plaintiff has not established that the President owes him a "clear nondiscretionary duty" and the President's selection of who should lead an executive branch agency is certainly not a mere ministerial task. Further, many of the cases cited by Plaintiff do not concern federal offices, and thus do not raise separation-of-powers concerns implicated here. *See, e.g.*, *Crawford v. Addison*, 73 U.S. 291, 297 (1867); *Boyd v. Nebraska*, 143 U.S. 135, 151 (1892). As to Plaintiff's belated request for a writ of quo warranto, as Defendants previously stated, *see* Def.'s Mot.

at 18, Plaintiff has not even attempted to meet the prerequisites for a quo warranto application.[4] *See* Order at 4-5, *Dellinger*, No. 24A790 (Gorsuch, J., dissenting) (quo warranto is "a distinct *legal* remedy [Plaintiff] never sought, the district court never invoked, and the procedures for which he did not follow."). The cases cited by Defendants holding that that a plaintiff challenging his removal *could* request these remedies does not mean that Plaintiff here has satisfied the requirements showing he is entitled to them—and he has not made this showing. Moreover, Plaintiff's acknowledgement that he may pursue these legal remedies further underscores Defendants' point that the equitable remedy of reinstatement is not available to him.

*Fifth*, Plaintiff appears to request that the Court "craft equitable remedies" previously unrecognized. Pl.'s Mot. at 25-26. As explained, the Supreme Court has expressly held that courts "lack the power to remedies previously unknown to equity jurisprudence." *Grupo*, 527 U.S. 308 at 332. The Court should not contravene this binding precedent, and such a novel remedy would be particularly disruptive here. As the Supreme Court stated in *White*, allowing courts of equity to intervene in removal cases would thus "invade the domain . . . of the executive" and "lead to the utmost confusion in the management of executive affairs." 171 U.S. at 76, 378.

*Sixth*, Plaintiff requests in the alternative that the Court issue partial summary judgment, accompanied by either a declaratory judgment that Plaintiff "is the proper head of the OSC" or backpay. Pl.'s Mot. at 26-27. For the reasons previously stated, a court cannot award declaratory judgment that effectively reinstates Plaintiff by announcing that he is the "proper" head of OSC. And even if Plaintiff could eventually seek backpay, because Defendants have established here that Plaintiff was lawfully removed, Def.'s Mot. at 6-15, the Court should not award partial summary judgment in Plaintiff's favor.

---

[4] Plaintiff concedes that he has not requested nor satisfied the requirements for a writ of quo warranto, but argues that the Court should construe his request for relief as encompassing it. Pl.'s Mot. at 23-24 n.9. Plaintiff, however, has plainly not satisfied the procedural requirements for the writ. *See* D.C. Code § 16-3501. Nor do any of his cited cases excuse noncompliance, including a prior request to the Attorney General.

### B.     Plaintiff Has Not Met the Other Injunction Factors.

An injunction would plainly inflict concrete harm on the President. The Special Counsel is not merely an officer; he is the head of an executive department. The statute empowers him to appoint subordinates in his department, *see* 5 U.S.C. § 1212(d)(1), and the Appointments Clause requires that he be able to supervise inferior officers below him, *see Arthrex*, 594 U.S. at 13. If the President loses control of the Special Counsel, he loses control of the Office. It should be self-evident that depriving the President of control over an entire executive department in the earliest days of his administration inflicts serious and irreparable harm

An injunction would also harm the government by threatening to cause the mass invalidation of everything that the Special Counsel does after he is reinstated. *See* Def.'s Mot. at 22-23. Plaintiff denies that the order would lead to such a result, Pl.'s Mot. at 29, but his argument conflicts with two clear rules set forth in *Collins*: (1) "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer," and (2) if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision," the tenure restriction would "inflict compensable harm." 594 U.S. at 256, 259 (citation omitted).

On the other side of the ledger, Plaintiff fails to identify any irreparable harm to himself. Even if someone who is terminated suffers an "injury," the crucial point is that the injury is not *irreparable*. A court can generally repair an injury to an individual from loss of employment by awarding post-judgment relief such as back pay, where appropriate. But a court cannot repair the injury to the separation of powers, the President, and our democratic system from a judicial order that deprives the President of control of an executive department for weeks or longer.

### CONCLUSION

For the reasons above, the Court should grant summary judgment in favor of Defendants and deny Plaintiff's cross-motion for summary judgment.

Dated: February 25, 2025                                           Respectfully submitted,

                                                                                    ERIC J. HAMILTON
                                                                                    *Deputy Assistant Attorney General*

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Madeline M. McMahon*
MADELINE M. MCMAHON
(DC Bar No. 1720813)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 451-7722
Email: madeline.m.mcmahon@usdoj.gov

*Counsel for Defendants*