UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMPTON DELLINGER, in his personal capacity and in his official capacity as Special Counsel of the Office of Special Counsel,<br><br>Plaintiff,<br><br>-against-<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, KAREN GORMAN, in her official capacity as Principal Deputy Special Counsel and, upon the purported removal of the Special Counsel, the Acting Special Counsel of the Office of Special Counsel, KARL KAMMANN, in his official capacity as the Chief Operating Officer of the Office of Special Counsel, DONALD J. TRUMP, in his official capacity as President of the United States of America, and RUSSELL VOUGHT, in his official capacity as Director of the Office of Management and Budget,<br><br>Defendants. | Civil Case No. 1:25-cv-00385-ABJ |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND A PERMANENT INJUNCTION AND IN OPPOSITION TO THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

Kate L. Doniger*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
kdoniger@heckerfink.com

Joshua A. Matz, Bar No. 1045064
Jackson Erpenbach, Bar No. 1735493
Benjamin Stern*
HECKER FINK LLP
1050 K Street NW Suite 1040
Washington, DC 20001
(212) 763-0883
jmatz@heckerfink.com
jerpenbach@heckerfink.com
bstern@heckerfink.com

*Admitted pro hac vice

*Attorneys for Plaintiff Hampton Dellinger*

**INTRODUCTION**

The Court has received extensive briefing and oral argument as to why Special Counsel Dellinger's termination was unlawful—and as to why his statutory for-cause removal protection is constitutional under *Seila Law v. CFPB*, 591 U.S. 197 (2020), and *Collins v. Yellen*, 594 U.S. 220 (2021). We will not reprise those points. Instead, we write to provide additional authority and analysis in support of two specific contentions. *First*, because Special Counsel Dellinger cannot make any final decision on the part of the Executive Branch without the supervision and approval of others who were nominated by the President and confirmed by the Senate, he is an inferior officer. *Second*, the Court has authority to issue the relief requested here, including mandamus.

**ARGUMENT**

**I.  The Special Counsel Is an Inferior Officer**

As explained in prior briefs and at oral argument, the Special Counsel is an inferior officer under Supreme Court precedent. *See* Pl. Br. 11-14; *see also Morrison v. Olson*, 487 U.S. 654, 671-672 (1988). This is a separate basis on which to uphold his for-cause removal protections.

To be sure, the government asserts that the Special Counsel cannot be an inferior officer because his work is not supervised. But the Supreme Court has made clear that what matters in this context is whether an officer's substantive decision-making is subject to review by others inside the Executive Branch prior to any final conduct or decision on the part of the Executive Branch. *See, e.g.*, *Edmond v. United States*, 520 U.S. 651, 665 (1997) ("What is significant is that the judges of the Court of Criminal Appeals have no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers."). That standard is satisfied here. Moreover, the fact that the Special Counsel has no single, designated supervisor is no barrier to inferior officer status. *See United States v. Arthrex*, 594 U.S. 1, 13 (2021) (explaining that in

1

*Edmond* the officers were "effectively supervised by a combination of Presidentially nominated and Senate confirmed officials in the Executive Branch"). As we have previously explained, the Special Counsel is "effectively supervised" by the MSPB—and by the agency heads to whom he offers information and recommendations—and he has "no power to render" any binding decision for the Executive Branch "unless permitted to do so" by the MSPB or other agencies. *See Edmond*, 520 U.S. at 665.[1]

The government next asserts that the Special Counsel must be an inferior officer because he is appointed by the President and confirmed by the Senate. But "[t]he default manner of appointment for inferior officers is also nomination by the President and confirmation by the Senate." *Arthrex*, 594 U.S. at 12 (cleaned up); *see also Edmond*, 520 U.S. at 660 ("The prescribed manner of appointment of principal officers is also the default manner for appointment for inferior officers."). It is thus clear that nomination and consent do not define principal officer status.[2]

---

[1] In a late-night letter to the Supreme Court just hours after this Court's hearing yesterday, the government advanced a new argument: that the Special Counsel cannot be an inferior officer because, in some instances, the MSPB gives "deference" to the Special Counsel's "initial determination." Letter of Scott Bessent, *Bessent v. Dellinger*, 24A790 (U.S. Feb. 26, 2025). But the Supreme Court has made clear that a less demanding standard of review is no obstacle to inferior officer status. *See Edmond*, 520 U.S. at 664-65 ("The scope of review is narrower than that exercised by the Court of Criminal Appeals: so long as there is some competent evidence in the record to establish each element of the offense beyond a reasonable doubt, the Court of Appeals for the Armed Forces will not reevaluate the facts. This limitation upon review does not in our opinion render the judges of the Court of Criminal Appeals principal officers. What is significant is that the judges of the Court of Criminal Appeals have no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers.").

[2] Relatedly, the government argues that the Special Counsel must be a principal officer because he "is authorized to appoint other inferior officers." Gov't Resp. 3. But the government does not cite any authority for the proposition that the Special Counsel can appoint inferior officers. Instead, it notes that the Heads of Departments can appoint inferior officers under Article II. As discussed below, the Special Counsel is not the "Head of a Department." And there is no reason to believe that the "legal, administrative, and support personnel" that the Special Counsel can appoint under 5 U.S.C § 1212(d)(1) wield sufficient executive authority to count as officers of the United States.

2

Finally, the government objects to the Special Counsel's inferior officer status on the basis that he is "the head of a distinct agency." Gov't Resp. 3. But the Supreme Court has rejected the "assumption that every part of the Executive Branch is a department." *Freytag v. Commissioner*, 501 U.S. 868, 885 (1991). Here, because the Special Counsel's duties and jurisdiction are limited and his nonbinding recommendations are "subordinate" to the MSPB and other agencies, the OSC does not "constitute[] a Department for the purposes of the Appointments Clause." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 511 (2010); Pl. Br. 11-13.

## II.  Permanent Declaratory, Injunctive, and Mandamus Relief Are Warranted

Most fundamentally, Special Counsel Dellinger seeks two forms of permanent relief. First, a declaratory judgment that Hampton Dellinger's February 7 termination was unlawful and void, that he is the Special Counsel, and that he is the head of the Office of Special Counsel. Second, an order against the subordinate executive officials named in the complaint that Special Counsel Dellinger may not be removed from office, that he may not be obstructed or denied the authorities or resources of his office, and that an Acting Special Counsel may not be recognized in his place.

That relief is authorized by binding Circuit precedent. Pl. Br. 18. Indeed, it is beyond question that federal courts may review the President's unlawful actions by enjoining subordinates responsible for implementing them. Pl. Br. 19; *see also, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971). And it is equally well settled that courts may issue a declaratory judgment on the understanding that the President will, in good faith, follow the law as articulated by the Judiciary. Pl. Br. 19, 26-27; *see also Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality op.) ("[W]e may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the [law] by the District Court, even though they would not be

directly bound by such a determination."). The government's claim that declaratory judgments are categorically injunctive in nature and bound by traditional limits on equity, Gov't Resp. 9-10, is simply mistaken, *see Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("Actions for declaratory judgments are neither legal nor equitable . . . .").

The government separately contends that the relief Special Counsel Dellinger seeks was not "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). But for centuries, courts have ordered that wrongfully removed officials be restored to public office. Pl. Br. 21-24. No more is required under *Grupo Mexicano* because the "specific actions and the resulting practical consequences" in those cases are the same as what Special Counsel Dellinger seeks here. *See, e.g.*, *SEC v. Cavanagh*, 445 F.3d 105, 118 (2d Cir. 2006) (explaining this point); *see also Liu v. SEC*, 591 U.S. 71, 76 n.1 (2020) (directing courts to identify "parallels" in remedies historically awarded, and not to "elevate form over substance" (citing *Cavanagh*)). In fact, the court's remedial authority is enhanced here, where (unlike in *Grupo Mexicano*, *In re Sawyer*, or *White v. Berry*) the public equities at stake are defined by an express congressional guarantee of for-cause removal protection. Pl. Br. 25-26; *see also Webster v. Doe*, 486 U.S. 592, 604-05 (1988) (rejecting the government's position that reinstatement was categorically unavailable, citing *Hecht Co. v. Bowles*, 321 U.S. 321 (1944)).[3]

---

[3] The undisputed history of *quo warranto* remedies also confirms courts' long-settled authority to remove and restore public officials. Pl. Br. 22. The government responds that the complaint does not identify a *quo warranto* remedy by name. Gov't Resp. 11 n.4. But the Court may properly construe the complaint's request for "all other appropriate relief" as covering such remedies. *See* Compl. at 14; *Severino v. Biden*, 581 F. Supp. 3d 110, 116 (D.D.C. 2022), *aff'd*, 71 F.4th 1038 (D.C. Cir. 2023). The sole hurdle the government identifies is that Special Counsel Dellinger did not first ask the U.S. Attorney General to file suit—a request that, as the government's conduct in this litigation amply demonstrates, would have been futile. *See* Pl. Br. 23 n.9.

4

As explained at oral argument, Special Counsel Dellinger also respectfully requests that the Court expressly issue a writ of mandamus against the subordinate official Defendants. The factors for mandamus relief in this context overlap with the factors for a permanent injunction. *Compare* Gov't Br. 16; Pl. Br. 9 (permanent injunction factors), *with Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (mandamus factors); *see* Compl. ¶¶ 5, 49-50 (invoking court's mandamus jurisdiction). The government's sole response to this point is that the President's power to appoint and remove the Special Counsel is not a "ministerial" duty. Gov't Resp. 10. But that response confuses the remedy with the merits. Section 1211(b) imposes a plainly ministerial duty: it "admits of no discretion" that the Special Counsel may be removed only for cause, a conclusion the D.C. Circuit has already reached. *See Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996); *see also id.* at 977-78 ("disagree[ing] with" the government's argument that a valid for-cause removal protection is discretionary). Accordingly, mandamus relief is appropriate and justified, and would help to mitigate any confusion arising from the government's (mistaken) arguments concerning limitations on the Court's equitable authority to issue injunctive relief. *See Stern v. S. Chester Tube Co.*, 390 U.S. 606, 609-10 (1968) (a court may "order" conduct either as mandamus or injunction).[4]

---

[4] The remaining requirements for a permanent injunction were discussed at length in Special Counsel Dellinger's papers and at oral argument. *See* Pl. Br. 27-29; Tr. 32:1-34:12, 51:11-53:24.

## CONCLUSION

The Court should deny the government's motion for summary judgment, grant Special Counsel Dellinger's cross-motion, and issue the requested relief.

                                                          Respectfully submitted,

| | |
|---|---|
| Kate L. Doniger* | /s/ Joshua A. Matz |
| HECKER FINK LLP | Joshua A. Matz, Bar No. 1045064 |
| 350 Fifth Avenue, 63rd Floor | Jackson Erpenbach, Bar No. 1735493 |
| New York, New York 10118 | Benjamin Stern* |
| (212) 763-0883 | HECKER FINK LLP |
| kdoniger@heckerfink.com | 1050 K Street NW |
| | Suite 1040 |
| | Washington, DC 20001 |
| | (212) 763-0883 |
| | jmatz@heckerfink.com |
| | jerpenbach@heckerfink.com |
| | bstern@heckerfink.com |
| *Admitted pro hac vice* | *Attorneys for Plaintiff Hampton Dellinger* |

DATED: February 27, 2025